SWEET & FAULKNER *vs.* BARNEY, president of the United States Express Company.

*Prima facie,* a person receiving money is entitled to it, and does not become a debtor to the person delivering it. Some evidence in explanation of the transaction is necessary to establish a liability by the receipt of the money.

Hence, a bank in the city to which a package of money is sent by bankers in the country, by express, being considered the owner of the money, may authorize the same to be delivered at the office of the express company, or at any other place, in the city, to any person it may select; and the express company, on making such a delivery, will be discharged of their obligation in respect to the delivery; whether their obligation be that of common carriers, or of forwarders only.

The substance and spirit of what the persons sending the money, under such circumstances, exact, and the express company undertake, in regard to a delivery, is that there shall be such a delivery in the city as will charge the bank there with the receipt of the money, as between it and the persons sending it.

Where a package of money, thus sent, is directed to a bank in the city of New York, at its usual place of business, it is the duty of the express company— in the absence of any authority from the bank for a different mode of delivery—to deliver the package at the banking office, to the officer or clerk whose business it is to receive money for the bank.

And if it appears that it is the usual course of business of the express company to deliver money packages according to their address, it will be assumed that any particular package was delivered to, and received by, the company in reference to that practice, where there is no express contract in regard to the place of delivery, or the officer or person to whom the delivery shall be made.

In case of a package of money sent by country bankers to a bank in the city of New York, directed to it at its place of business, only a delivery at the office, to the proper officer of the bank, will be a delivery according to the address on the package, or which will charge the bank with the money.

But a delivery at the banking office, to the general receiving agent, being for the benefit of the bank alone, the bank may waive the same, and receive the money at a different place in the city, and by a different agent, and the express company be thereby discharged from liability.

The delivery of the money by the express company, at their office, to a person usually employed as a porter at the bank, being insufficient, unless it was authorized by the bank, it is incumbent on the company, for their defense, to prove such authority. This may be direct and express, or implied from the acts of the porter, such as receiving money for the bank, on other occasions, at the express office, sent to it in a similar way and with a similar address as that in question, with the knowledge and assent of the bank.

APPEAL from a judgment entered at a special term, after a trial at the circuit. In November, 1854, the plaintiffs, being bankers in Livingston county, sent by the United States Express Company, of which the defendant was president, a sealed package of bank bills, directed on the cover, to "People's Bank, 173 Canal street, New York." The agent of the express company, on receiving the package in Livingston county, gave the following receipt:

"United States Express Company,

Office No. 82 Broadway, New York,

Nov. 18, 1854.

S. Sweet & Co. has delivered to us one package money, marked as follows: People's Bank, 173 Canal street, N. Y., and said to contain twenty-eight hundred and ninety-two dollars, which we undertake to forward to New York, or to the nearest agency of this company only, perils of navigation excepted. And it is hereby expressly agreed that said United States Express Company are not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package or thing, for over $150, unless the just and true value thereof is herein stated; nor for any loss or damage by fire; nor upon any property or thing unless properly packed and secured for transportation; nor upon frail fabrics, unless so marked upon the package containing the same; nor upon any fabrics consisting of or contained in glass.

For the proprietors,        W. W. FINCH, Agt.

Contents unknown."

This action was brought to recover damages for the non-delivery of the package. The answer admitted the receipt of a package from S. Sweet & Co., directed to the "People's Bank, 173 Canal street, New York," on the day aforesaid, but denied any knowledge or information of its contents, and put in issue the residue of the complaint. The defense set up in the answer was, in substance, 1. That the defendants were not common carriers, but express forwarders; that their undertaking was evidenced by the receipt delivered by them at the time of receiving the package; that such paper created an obligation

only to transport to New York, which was done, but not to deliver the same at the bank, or to the officers thereof, and averred a delivery. The cause came on for trial at the Livingston circuit, before Mr. Justice JOHNSON, and a jury, on the 9th of October, 1855. The plaintiff proved the receipt of the package by the defendants; that it contained bank notes; that the plaintiffs had not received the package or the proceeds thereof. It was also proved that the express company forwarded the package to their office in New York. On its arrival, (on 20th November,) a person named Messenger, in the employ of the People's Bank, called for it, received it there, and gave a receipt for it in the book of the company. The book showed that he had thus received and receipted for the bank, *every* package directed to it, and carried by the company during that month; this being the tenth in number. It was further shown that this Messenger had received, for the six previous months, more than half of the packages intended for the bank; that this mode of delivery to him was adopted at the request of the officers of the bank; that it was for their accommodation, and not for that of the express company; that packages so delivered had been regularly credited by the bank, and no exception taken. This package thus delivered to Messenger, was stolen from him before he got to the banking house. The bank then, *for the first time*, disowned the agency of Messenger, and indemnified the plaintiffs.

The counsel for the defendants offered to show that John J. Messenger was in the habit of receiving from the defendants packages of money addressed to the bank, and did such other acts out of the bank; that a delivery to him at places other than at the bank was a good delivery to the bank. The counsel for the plaintiffs objected to any evidence of the acts of Messenger at places other than at the bank, or of a delivery to him at such places, by the defendants, of packages of money addressed to the bank as a delivery to the bank, unless they showed it was with the knowledge and authority of the bank. The court overruled the objection, and held that the defendants could show the nature and character of Messenger's employment and acts

for the bank outside the banking house, and could in this connection show the delivery by the defendants to Messenger at places other than at the banking house at No. 173 Canal street, at different times, of packages of money addressed to the People's Bank, 173 Canal street, and which afterwards came into the possession of the bank, and were treated by it as regularly received and delivered, and it would be a question of fact for the jury to determine on such evidence whether the same was with the knowledge and authority of the bank, and if so, it was a good delivery to the bank; to which rulings of his honor the judge the counsel for the plaintiffs excepted. The witness W. A. Countryman then testified, subject to the said exception of the plaintiffs' counsel, that he had met Messenger in Wall street and at different banks acting for the People's Bank in making exchanges and collections; had seen him carrying large packages of money, receiving and paying out the same; he usually carried the money in a little trunk; the packages when delivered at the bank were not always delivered to Mr. Mayhew, but were usually so delivered; some of the officers of the bank employed in the bank found fault that they got the packages too late for their exchanges, and told him that he might leave the packages at 92 Broadway, where the bank had an agency for the purpose of receiving deposits from down town dealers; that Thomas Sproull, a clerk of the bank, attended at this agency a part of the time; that he instructed the witness, who was in the employ of the express company as city messenger for the delivery of money and valuable packages, to give packages addressed to the People's Bank, to Messenger, whenever he should meet him.

At the close of the testimony, the counsel for the plaintiffs requested his honor the judge to charge the jury, 1. That the duty of the defendants was to deliver the package at the bank, as directed; and they were not authorized to deliver the same to any person, at any place, other than at the bank. 2. That neither the bank nor the defendants were authorized to change the mode of delivery of the packages, without the consent or the knowledge of Sweet & Co. And such change, if made without

Sweet *v.* Barney.

their knowledge or consent, would not discharge the defendants 3. That there was not sufficient evidence submitted on the part of the defense to show an authority from the bank to Messenger to receive the packages from the defendants, so as to discharge them from their liability in this action. 4. That the evidence showed that Messenger, in receiving the packages at places other than at the bank, acted as the agent of the defendants. The judge refused so to charge, and the counsel for the plaintiffs excepted. The judge then charged the jury that the defendants were common carriers of the package of money in question, and liable as such for its safe carriage and delivery to the People's Bank, to which it was addressed. That they were bound to make such delivery as would make the consignees liable to the owner for the contents of the package. That such a delivery would be either at the banking house or office where the business of such bank was carried on, to some person in charge of the business; or to some person elsewhere in the city duly authorized by the proper officers of the bank to receive packages of this description. That such delivery in either case would discharge the defendants from their liability. That if the delivery was made at any place other than the bank, it was incumbent on the defendants to show that the person to whom it was delivered was authorized by the bank to receive it, and was its agent for that purpose. That a delivery to an agent of the bank duly authorized to receive packages of this description forwarded in this manner, would be delivery to the bank, and discharge the defendants. That the authority of Messenger, to whom the package in question was delivered by the defendants, to receive it for the bank, might be established by evidence of direct authority from the proper officers of the bank, or it might be inferred from evidence of repeated and continued acts of Messenger as agent, of the same character, with the knowledge and assent of such officers, and without any objection on the part of such officers, or notice to persons known to them to be thus dealing with him as such agent. That an authority from Sproull to deliver to Messenger was not sufficient, unless it appeared satisfactorily that such authority was at the instance or with the assent

and approbation of the officers aforesaid. That as there was no evidence of direct authority to Messenger, it was a question of fact for the jury to determine, from all the facts and circumstances, and the manner of transacting this kind of business, whether the officers of the bank knew that Messenger was holding himself out as their agent and professing to act as such; and whether, in fact, he had any authority from them thus to act, or was professing thus to act without direct authority, but with their knowledge and consent. That in either case, if they should find such to be the fact, the delivery was good, and the defendants discharged. The jury brought in a verdict for the defendants.

*J. W. Gilbert*, for the appellants.

*O. Hastings*, for the respondents.

*By the Court*, T. R. STRONG, J. The plaintiffs were bankers at Dansville; and the People's Bank, to which the package of money was addressed, was the corresponding bank of the plaintiffs in the city of New York. The package was delivered to the defendants, as expressed in the receipt, "to forward to New York;" and the legal inference from this relation between the plaintiffs and the People's Bank, and the sending of the money, in the absence of other evidence on the subject, is that the money was sent as a payment, either upon a pre-existing debt to, or to purchase a credit at that bank, as a provision for drafts. *Prima facie* a person receiving money is entitled to it, and does not become a debtor to the person delivering it; some evidence in explanation of the transaction is necessary to establish a liability by the receipt of the money. (*Welch* v. *Seaborn*, 1 *Stark. R.* 474. *Bogert* v. *Morse*, 1 *Comst.* 377.) In that view the People's Bank, on the receipt of the money, would be the owners of it; and no good reason is perceived why the bank might not authorize a delivery of the money at the office of the defendants in New York to any person it might select; and the defendants on making such a delivery, be discharged of their

Sweet *v.* Barney.

obligation in respect to the delivery; whether their obligation was that of common carriers, or, as stipulated in the receipt, " forwarders only." The substance and spirit of what the plaintiffs exacted, and the defendants undertook, in regard to a delivery, was that there should be such a delivery in New York as would charge the bank there with the receipt of the money as between it and the plaintiffs. The plaintiffs were only interested that there should be such a delivery; that the purpose of a payment or purchase of credit should be effected; beyond that the bank was solely interested, and might, with the defendants' consent, direct on the subject as it should think proper. It might with such consent direct the defendants to deliver to any person, at any store or place in the city, other than its principal office or place of business, having regard to its own interests, or convenience, or even the convenience of the defendants.

Independent of authority from the People's Bank for a different mode of delivery, it was doubtless necessary in this case to deliver the money at the banking office, to the officer or clerk whose business it was to receive money for the bank. The course of business of the defendants was to deliver money packages for that city according to their address, and it must be assumed that the one in question was delivered to, and received by, the defendants in reference to that practice, there being no express-contract in regard to the place of delivery, or the officer or person to whom the delivery should be made. The legal duty of the defendants was therefore to deliver according to their usual course of business; and so far as there was any implied contract it arose out of, and corresponded with, this legal obligation. Only a delivery at the office, to the proper officer of the bank, would be a delivery according to the address on the package, or which would charge the bank with the money. But, as already stated, I think the bank might receive the money at a different place in the city, and by a different agent, and the defendants be thereby discharged from liability. A delivery at the banking office, to the general receiving agent, was for the benefit of the bank alone, which the bank might waive, and substitute another place and agent. Any mode of delivery in New York, consist-

Sweet *v.* Barney.

ent with the object and intent of the plaintiffs in sending the money, assented to by the bank, would discharge the duty of the defendants as to a delivery of the money.

The delivery of the money by the defendants at their office in New York, to a person usually employed as a porter of the People's Bank, being insufficient unless it was authorized by the bank, it was incumbent on the defendants for their defense to prove such authority. The authority might be direct and express, or implied from the acts of the person who received the money, such as receiving money for the bank, on other occasions, at the defendants' office, sent to it in a similar way and with a similar address as that in question, acquiesced in by the bank. (*Conover* v. *Mut. Ins. Co.* 1 *Comst.* 290. *Story on Ag.* §§ 54 *to* 56, 84 *to* 123.) In the present case, the defendants relied, in support of such authority, upon presumptive evidence, consisting of a series of similar acts by the alleged agent, without, so far as appears, any objection, or even inquiries by the bank at any time, where the money was received. Looking at the charge to the jury in connection with the questions of evidence raised, I think the plaintiffs have no substantial ground for complaint as to the reception of evidence, on that subject; and I am satisfied there was sufficient evidence of such acts as above referred to, and the knowledge of, and acquiescence therein, by the bank, to call for the submission of the question of agency to the jury. As to such knowledge by the bank, it must have been possessed by it, unless its officers were guilty of the grossest negligence in omitting to inquire how the money was received; and if they knew it was delivered at the defendants' office for them, they must, in the absence of evidence that they objected, be deemed to have assented to the practice of the defendants to make such a delivery.

I see no error in the charge or refusals to charge, and am of opinion the judgment should be affirmed.

[CAYUGA GENERAL TERM, June 1, 1857. *Johnson, T. R. Strong* and *Smith,* Justices.]