EMIL GROSSMAN MANUFACTURING Co., INC., Appellant, Respondent, v. NEW YORK CENTRAL RAILROAD COMPANY, Respondent, Appellant, Impleaded with MICHIGAN CENTRAL RAILROAD COMPANY, Defendant.

First Department, February 21, 1918.

Carriers — evidence not establishing agreement to deliver goods within certain time — proof improperly received affords no basis for amendment of pleadings to conform thereto — agreement with shipper to expedite shipment at regular rates in violation of Interstate Commerce Act — liability of carrier under bill of lading for damage to goods in transit — consequential damage.

In an action by a shipper against a carrier for failure of the latter to deliver goods shipped within a certain period, evidence *held* insufficient to sustain a finding that there was an agreement between the plaintiff and the defendant by which the latter agreed to deliver plaintiff's goods not later than a certain date.

A complaint, alleging an agreement by the defendant to deliver a shipment by the plaintiff not later than the fourth morning following receipt thereof,

---

* Since amd. by Laws of 1915, chap. 266.— [REP.

will not be amended at the trial so as to provide that the agreement was to deliver " at all events with reasonable dispatch and within a reasonable time, " in order to conform the pleadings to proof which had been improperly received under objection and exception.

An agreement with a particular shipper to expedite a shipment at regular rates, where no rate has been published for expediting, is a discrimination and a violation of the Interstate Commerce Act, and relief thereon will be denied.

The rights of a shipper and a connecting carrier are to be measured solely by the bill of lading issued by the initial carrier.

Under a bill of lading providing that the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the time and place of shipment, the shipper is entitled only to the actual damage to its property, and not to any consequential damage arising either from its delayed delivery or from an inability to use it for any period of time because of its damaged condition.

CROSS-APPEALS by the plaintiff, Emil Grossman Manufacturing Co., Inc., and by the defendant, New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of June, 1916, upon the verdict of a jury. The plaintiff further appeals from an order entered in said clerk's office on the 20th day of June, 1916, denying its motion for a new trial made upon the minutes.

*David L. Podell* of counsel [*Jacob Podell* with him on the brief; *Harry S. Wallenstein*, attorney], for the appellant, respondent.

*William Mann* of counsel [*Alex. S. Lyman*, attorney], for the respondent, appellant.

DOWLING, J.:

This action was originally brought against the New York Central and Hudson River Railroad Company (predecessor of the defendant the New York Central Railroad Company) and the Michigan Central Railroad Company, hereinafter respectively called the New York Central and the Michigan Central. The complaint set forth three causes of action against both defendants. It was alleged therein that on or about August 25, 1913, the plaintiff entered into an agreement with the defendant New York Central whereby the latter agreed to ship certain machinery belonging to the

plaintiff from its factory in Detroit, Mich., to its factory in the Bush Terminal Building, borough of Brooklyn, city of New York, which shipment was to be made over the lines operated and controlled by the defendants herein; that the New York Central through its duly authorized agent undertook, promised and agreed with plaintiff to deliver said machinery safely to plaintiff at its place of business aforesaid in the city of New York upon the fourth morning following the receipt thereof by the defendants at the city of Detroit; that the defendants were informed that the machinery so to be shipped was especially adapted for certain work relating to the manufacture of autombile accessories and was to be used by plaintiff in its business in New York and that its factory therein could not be operated without the use of the said machinery; that said machinery was delivered on or about September 6, 1913, in perfect condition, by plaintiff to defendant Michigan Central which issued receipts therefor, whereby it agreed to deliver the same to plaintiff at the Bush Terminal Building aforesaid, said shipment to be made over the New York Central lines. The first cause of action then avers that either or both of said defendants transported said machinery in a careless and negligent manner, allowing same to become damaged and broken, and as a result part of the shipment arrived at the Bush Terminal Building in a damaged condition, to plaintiff's damage in the sum of $63.71. The second cause of action avers (in addition to the main allegations) that the New York Central had stipulated and agreed with plaintiff to deliver said shipment not later than the fourth morning after the receipt thereof by defendants at the city of Buffalo [so in original complaint], and plaintiff, relying upon said representations, had made all arrangements to resume the work of its factory at that time, and as a result plaintiff was unable to operate its factory during eleven days time when the machinery was *en route,* and thereby suffered loss and damage for seven days over and above the agreed time of delivery, to its damage in the sum of $1,155. The third cause of action (after realleging the main facts set forth in the other two causes of action) contains the further averment that on or about September 17, 1913, the machinery in question was received by plaintiff at its factory in the

borough of Brooklyn, but damaged and totally unfit for use, · by reason whereof plaintiff was required to employ mechanics to repair it, which repairs were not fully completed until September 27, 1913, during which time plaintiff was unable to use the machinery to its loss in the sum of $840.

The appellant acknowledged its liability in the sum of $63.71, being the claim set forth in the first cause of action, for the reason that the proof showed that the machinery arrived at Suspension Bridge in good condition, where it passed into its custody and the appellant was unable to show how or where it was damaged, if not upon its own lines between Buffalo and New York. Upon the second cause of action the jury found in favor of the plaintiff in the sum of $156. On the third cause of action the jury found in favor of the defendant. Upon the trial the plaintiff consented to a dismissal as against the Michigan Central, conceding it had established no cause of action against it. The plaintiff now appeals from the finding of the jury on the third cause of action in favor of the defendant and also from the refusal to allow it larger damages upon the second cause of action than the sum of $156. The defendant appeals from the verdict of the jury against it on the second cause of action in the sum of $156.

The plaintiff endeavors to establish its claim of a special agreement by the New York Central to forward the goods in question from Detroit to New York and to have them arrive there not later than the fourth morning after they were delivered to it at Detroit, by the testimony of Emil Grossman, president of the plaintiff, who claims that at a meeting between him and Thomas Newman, soliciting freight agent of the New York Central, held at the plaintiff's office on either August twenty-fifth or twenty-sixth, Grossman told Newman that the plaintiff was about to remove its entire factory and abandon manufacturing in Detroit, and as the material to be moved would occupy at least four cars and as delay would involve great hardship and expense, the plaintiff desired to send its material by the railroad that would deliver it in the shortest time possible. Grossman said he tried to have Newman agree to get the freight to New York in two days, but while the latter admitted it could be done, he said he would not undertake to do it, and finally said it would be done in three days or

" at least on the fourth morning." Grossman said that he then asked Newman to put the agreement in writing. This conversation is denied by Newman, who testified that no agreement whatever was made, but that Grossman was looking for information concerning the transportation of the freight in question and inquired about rates, when Newman said that the time for transportation would be approximately the fourth morning, but a great deal depended upon Grossman's getting in touch with the Michigan Central in Detroit and arranging for the prompt forwarding of the cars. Newman said that Grossman never agreed with him as to shipping the freight in question, but the only conclusion reached was that Newman should wire a representative of the Michigan Central in Detroit to meet Grossman and give him any suggestions that he might be able to furnish, and in fact such a representative did call upon Grossman, as Grossman admits, and as the result of that call the goods were shipped over the Michigan Central and a bill of lading issued therefor by the Michigan Central which the plaintiff accepted and as to which no question has ever been raised. Furthermore, the letter ·sent after the interview between Grossman and Newman, which Grossman relies upon as corroborating his theory that an agreement was made between them, is in direct contradiction to such a theory. The letter is signed in the name of the general eastern freight agent of the New York Central, initialed by Newman, refers to the conversation between Grossman and Newman, and shows that instead of any agreement having been arrived at between plaintiff and the New York Central, through their respective representatives, no agreement was possible at that time as the rates could not be quoted until the classification of the goods to be shipped was known. Furthermore, that letter stated that the time in transit from Detroit to the Bush docks was approximately the fourth morning, but gave no indication that any agreement as to any absolute time for delivery had been fixed. The testimony shows that Grossman consulted with a representative of the Michigan Central in Detroit with reference to the shipment of these goods, made the agreement for plaintiff with the Michigan Central for their shipment from Detroit to the Bush Terminal Building in Brooklyn, delivered

the goods to the Michigan Central at Detroit, received its bill of lading therefor in accordance with law, made out upon the form of the Michigan Central and signed in its behalf by its agent, and had no further dealings of any kind with the New York Central. The plaintiff accepted this bill of lading without question, and proved no other or further agreement. The finding of the jury, therefore, that there was any agreement between the plaintiff and the New York Central by which the latter agreed to deliver plaintiff's goods at the Bush Terminal Building not later than the fourth morning after their receipt in Detroit (or at any other time) is without evidence to sustain it and is reversed. The plaintiff virtually conceded that it had failed to prove such an agreement as it set forth in its complaint, for during the examination of the witness Delgado it moved to amend its averments as to the alleged agreement with the New York Central so that such agreement was claimed to have been not only to deliver upon the fourth morning following receipt thereof by the defendant, but also " at all events with reasonable despatch and within a reasonable time from the date that the same was delivered to the defendant at its terminals at Detroit." This interjected an entirely new issue into the case and defendant's objection to the allowance of the amendment should have been sustained. It was error, in view of the record, to permit such an amendment. The assigned purpose of the amendment was to conform the pleadings to the proof, but the proof in question had been improperly received under objection and exception and afforded no basis for the alteration in the pleadings. The action of the trial court, therefore, in allowing this amendment is reversed.

Furthermore, there is neither claim nor proof that this alleged agreement to expedite the delivery of the plaintiff's goods was based upon any agreement by the plaintiff to pay a higher rate than that exacted for ordinary shipments. It has been held that a carrier who agrees to expedite a shipment in interstate commerce assumes a more burdensome liability and can exact a higher rate than where mere carrier liability exists; that an interstate carrier can assume an extra liability for expediting provided it makes and publishes a rate therefor

First Department, February, 1918. [Vol. 181.

open to all; and that an agreement with a particular shipper to expedite a shipment at regular rates, where no rate has been published for expediting, is a discrimination and as such a violation of the Interstate Commerce Act and relief on the contract will be denied. (See *Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155; *Atchison, etc., R. Co.* v. *Robinson*, 233 id. 173.) The rights of the parties herein are to be measured solely by the bill of lading for the goods issued by the Michigan Central. (*Wells, Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469; *Reid* v. *American Express Co.*, 241 id. 544; *D' Utassy* v. *Barrett*, 219 N. Y. 420.) Under that bill of lading the New York Central would be liable to plaintiff for the damage done to its goods while in process of shipment over the New York Central lines from Buffalo to Brooklyn. It was this liability which the New York Central recognized when it admitted liability in the sum of sixty-three dollars and seventy-one cents claimed in the first cause of action, being the actual damage done to the plaintiff's goods between the time they left Suspension Bridge in good order and arrived in Brooklyn in a damaged condition. But that is the only amount for which the New York Central is liable under the bill of lading, which contains a provision that the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the time and place of shipment; and using that basis for the computation of the damage, plaintiff is entitled only to the actual damage to its property and not to any consequential damage arising either from its delayed delivery or from an inability to use it for any period of time because of its damaged condition.

It follows, therefore, that the judgment appealed from should be modified by deducting therefrom the sum of $156 awarded upon the second cause of action, and as so modified affirmed, with costs to the respondent, appellant, New York Central Railroad Company.

Clarke, P. J., Smith, Page and Shearn, JJ., concurred.

Judgment modified as stated in opinion, and as modified affirmed, with costs to the New York Central Railroad Company. Order to be settled on notice.