LEOPOLD STRAHS, Doing Business under the Firm Name and Style of STRAHS METAL WORKS, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

(Supreme Court, Appellate Term, Second Department, October, 1920.)

Carriers — bill of lading — interstate shipments — effect of Carmack Amendment of the Hepburn Act of June 29, 1906 — interpretation of " reasonable dispatch "— damages.

The bill of lading issued by a common carrier at the time of the receipt by it of goods for shipment and the tariffs and classifications in effect at the time the shipment moves, constitute the contract of carriage.   (P. 278.)

The Carmack Amendment of the Hepburn Act of June 29, 1906, superseded all regulations and policies of the states and the exemption from liability of a carrier forbidden by section 20 of said act is a statutory declaration that a contract of exemption from liability for negligence is against public policy and void.   (Pp. 278, 279.)

Where in an action for damages for unreasonable delay in the delivery of an installment of a quantity of aluminum, under an interstate shipment to which the Carmack Amendment applies, and the presumption of negligence of the carrier raised by proof of unreasonable delay is not refuted, because of defendant's failure to offer any evidence on that issue, a finding that unreasonable delay in making delivery was caused by the negligence of the carrier is justified, where the duty of the carrier to forward the goods with " reasonable dispatch " was recognized in the bill of lading which also expressly provided for claims for delay and how, when and where they should be made.   Such conditions are not an exemption of the carrier from liability due to its negligence in not forwarding with " reasonable dispatch."   (P. 279.)

The provision of the bill of lading in regard to transportation with " reasonable dispatch " was intended merely to establish a rule for determining the value of the property in case of loss, and not to limit or diminish the carrier's liability.   (P. 280.)

18

Appellate Term, Second Department, October, 1920. [Vol. 113.

Judgment in favor of plaintiff for the difference between the invoice value of the goods at the place and time of shipment and their market value upon arrival at the point of destination, about six weeks late, when the shipper's customer, upon notification, refused to receive the goods, affirmed.

APPEAL by the defendant from a judgment of the Municipal Court, borough of Brooklyn, fifth district, rendered against it in favor of the plaintiff for the sum of $263.77.

J. T. McEntee, for appellant.

Philip Simon, for respondent.

KELBY, J. The summons was indorsed action for "Damages, breach of contract of delivery." The answer is a general denial. Later, it appeared that the particulars of the plaintiff's claim was for unreasonable delay in the delivery of aluminum.

On November 3, 1916, the plaintiff shipped at New York to its own order at East Chicago, Ind., fifteen cases of aluminum, and the defendant undertook to forward the same to said destination under the further shipping direction to notify the United States Reduction Company at East Chicago, state of Indiana, of arrival of the goods. The shipment is evidenced by a bill of lading issued by the defendant, and there is no controversy that, although the shipment was made from New York on November 3, 1916, it did not arrive in East Chicago until December 19, 1916. The plaintiff testified that the usual and reasonable time for goods to arrive, shipped between these two points, was "ten days to two weeks at the most." No oral testimony on the part of the defendant was offered at the trial, and this testimony of the plaintiff stands uncontradicted. Upon the further proof that the goods in

question were sold to the United States Reduction Company by the plaintiff at the rate of sixty cents a pound, and that the market value of the goods on December nineteenth, in East Chicago, was forty-eight cents a pound, but that plaintiff succeeded by diligence in selling the consignment at fifty-three and a half cents a pound, the court below has awarded damages for unreasonable delay on 4,058 pounds of aluminum at the rate of six and one-half cents a pound, amounting to $263.77. In effect, therefore, the plaintiff has been allowed as damages the difference between the invoice value of the goods at the place and time of shipment and the market value of the goods on December nineteenth in East Chicago; it having appeared further that on the arrival of the shipment in East Chicago on December nineteenth, the shipper's customer, the United States Reduction Company, when notified, refused to take the goods.

The defendant's contention is that the cause of action of damages for delay is not one for which the defendant is liable under the bill of lading. Section 3 of the bill of lading provides as follows:

" No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable despatch, unless by specific agreement indorsed hereon. Every carrier shall have the right in case of physical necessity to forward said property by any railroad or route between the point of shipment and the point of destination; but if such diversion shall be from a rail to a water route the liability of the carrier shall be the same as though the entire carriage were by rail.

" The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight

charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification of tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence.

" Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable.

"Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance."

The defendant also introduced in evidence Official Classification No. 43, which contains, among other things, the following:

" RULE 1.

" *Subdivision B*. Unless otherwise provided in this Classification, property will be carried at the reduced rate specified if shipped subject to all the terms and conditions of the Uniform Bill of Lading * * *. If consignor elects not to accept all the terms and conditions of the Uniform Bill of Lading * * * he should so notify the agent of the forwarding carrier at the time his property is offered for shipment. If he does not give such notice, it will be understood that he desires his property carried subject to the terms and conditions of the Uniform Bill of Lading * * * in order to secure the reduced rate.

" *Subdivision C.* Property carried not subject to all the terms and conditions of the Uniform Bill of Lading * * * will be carried at the carrier's liability, limited only as provided by common law and by the laws of the United States and of the several states in so far as they apply, but subject to the terms and conditions of the Uniform Bill of Lading * * * in so far as they are not inconsistent with such common carrier's liability, and the rate charged therefor *will be ten per cent* (10%) higher * * * than the rate charged for property shipped subject to all the terms and conditions of the Uniform Bill of Lading * * *.

" *Subdivision D.* When the consignor gives notice to the agent of the forwarding carrier that he elects not to accept all the terms and conditions of the Uniform Bill of Lading * * * but desires a common carrier's liability service at the higher rate charged for that service, the carrier must print, write or stamp upon the Uniform Bill of Lading * * * a clause reading:

" ' In consideration of the higher rate charged, the property herein described will be carried at the carrier's liability, limited only as provided by law, but subject to the terms and conditions of the Uniform Bill of Lading * * * in so far as they are not inconsistent with such common carrier's liability.' "

In support of defendant's contention that it is not liable for damages caused by unreasonable delay, the defendant cites the cases of *Grossman Manufacturing Co.* v. *New York Central R. R. Co.,* 181 App. Div. 764, and *American Locomotive Company* v. *New York Central R. R. Co.,* 190 id. 372. Both of these cases are apparent authority for the proposition that under a bill of lading, having the provisions above noted, the carrier is liable only for actual damage to the property shipped and not for any consequential damage

arising either from delayed delivery or from an inability to use it for any period of time because of its damaged condition; and from the case of *American Locomotive Company* v. *New York Central R. R. Co., supra,* defendant quotes from the opinion the following: "We should adhere to the construction of this clause in the bill of lading which was given to a like clause in *Grossman* v. *N. Y. C., supra,* and should hold that the liability of the carrier for mere delay in transportation has been released." The holding in the *Grossman* case was not necessary to the decision of the matter then before the court, and is dictum merely;[A] and in the *American Locomotive Company* case, the court construed the bill of lading there before it as not being a through bill of lading; but that the contract of carriage was in effect from Schenectady to the city of New York, alongside a vessel in the harbor of New York. Therefore this was not an interstate shipment but an intrastate shipment.

There can be no question that the bill of lading issued at the time of the receipt by the defendant of the shipment, and the tariffs and classifications in effect at the time the shipment moved, constitute the entire contract of carriage. *Burke* v. *Union Pacific R. R. Co.,* 226 N. Y. 534. Nor can there be any question that a common carrier may limit its common law liability by receiving the shipment for transportation subject to all the terms and conditions of the uniform bill of lading.

This being an interstate shipment the Carmack Amendment of the Hepburn Act of June 29, 1906, applies. 34 U. S. Stat. 584, c. 3591. The case of *Adams Express Company* v. *Croninger,* 226 U. S. 491, holds that this legislation superseded all regulations and policies of the states and that, Congress having taken possession of the subject, a law passed by it

took precedence of all other regulations.   The court reaffirmed that the exemption from liability forbidden in section 20 of the act was a statutory declaration that a contract of exemption from liability for negligence is against public policy and void.

The proof in this case that there was unreasonable delay raises a presumption of negligence on the part of the carrier which is not refuted by reason of failure to tender any evidence on that issue.   The court below therefore was justified in finding that there was unreasonable delay, caused by the negligence of the carrier.   10 C. J. 301, § 429 and cases cited.   Under the terms of the bill of lading, section 3, paragraph 1, above quoted, " No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market *or otherwise than with reasonable despatch,* unless by specific agreement indorsed hereon," the duty therefore of the carrier to forward with reasonable despatch was recognized in the bill of lading, and the 3d paragraph of the same section provides in express terms for claims for delay, and how, when and where they should be made.

The United States Supreme Court in *Missouri, Kansas, etc., R. R. Co.* v. *Harriman,* 227 U. S. 657, held that the liability imposed by this statute is " the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence."

Section 3, paragraph 2, of the conditions of the bill of lading, above quoted, cannot therefore be held legally to be an exemption of the carrier from liability due to its negligence in not forwarding with reasonable dispatch.

There is ample authority for the proposition that

this provision in the bill of lading is intended merely to establish a rule for determining the value of the property in case of loss, and not to limit or diminish the carrier's liability. See *Wallingford* v. *Atchison, etc., Railway Company,* L. R. A. 1918-B, 716, and annotated notes of cases, p. 720.

In *Shaffer* v. *Chicago, R. I. & P. R. Co.,* 21 Inters. Com. Rep. 8, 12, 13, after discussing the reasons for the approval of this condition in the bill of lading, it was said: '' It was found upon consideration of the entire matter that it would be wiser policy to adopt the value of the commodity at the time and place of shipment, and especially to accept the invoice value. This renders the ascertainment and adjustment of damages comparatively easy, and tends materially to check the litigious prosecution of exaggerative claims of damage. Moreover, it must be remembered that although the rule works to the advantage of the carrier when the market price has advanced subsequent to the date of shipment, it benefits the shipper in case the market price at destination should decline; and it seems fairly probable that in the long run the rule would be of advantage to the shipper as often as it is to the carrier.''

In the *Wallingford* case, *supra,* it was contended by the plaintiff that this condition in the bill of lading applied only as to the measure of damages where the goods had been lost, that is, destroyed, or in some manner damaged; and that it could not apply in that case because the wheat was transported without damage or loss, except as occasioned by the failure to deliver it at the proper place. The court held that this was a strained construction of the plain language of the stipulation, and held that public policy required that provisions of this character in bills of

lading, the forms of which have been approved by the interstate commerce commission, should be upheld.

In *Pearse* v. *Quebec Steamship Company*, 24 Fed. Repr. 285, it was held that the true meaning of such a provision is that the carrier is not to be liable or accountable for more than the invoice value of the goods damaged or lost, and where there is a partial injury the damage is to be computed on the basis of the invoice value of the goods damaged. Whatever is realized for the damaged goods must be credited on the invoice value the same as though the goods were abandoned to the carrier and the sale of the damaged goods were made by it.

It is, therefore, concluded that the defendant in this case was negligent in not forwarding the goods with reasonable dispatch and that the court below was correct in assessing the damages in the manner in which it did; that the provision in the bill of lading expressly recognized the duty of the defendant to forward with reasonable dispatch, and that the provision for the computation of damages for which the carrier is liable is not a release of its liability for its negligent delay, but is simply a rule for determining the value of the property. Judgment affirmed, with twenty-five dollars costs.

MANNING and CROPSEY, JJ., concur.

Judgment affirmed, with costs.