O. K. DISPLAY FIXTURE COMPANY, Plaintiff, *v.* AMERICAN RAILWAY EXPRESS COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, July. 1923.

*Carriers — express companies — contract of shipment consisting of uniform express receipts and schedules of carrier filed pursuant to Interstate Commerce Act — carrier instructed not to deliver goods to consignee — consignor's request for return of goods — carrier's refusal to return until freight charges paid — carrier's lien for outward freight — destruction of goods by act of God — carrier not liable — shipper liable to carrier for outward freight.*

MOTION to set aside verdict.

*Charles C. Evans (Emmet L. Holbrook,* of counsel), for motion.

*Morris Schussheim,* opposed.

NOONAN, J. On June 23, 24 and 25, 1921, the plaintiff's assignor shipped in three shipments a number of cases of store fixtures consigned to the Stetson Blouse Shop at San Antonio, Tex. The defendant was the carrier. Two shipments arrived at San Antonio on June twenty-eighth and one on June twenty-ninth. The Stetson Blouse Shop, which had just started in business, was not ready to receive the shipments and, at its request, the cases were not delivered but were held by the defendant in the on-hand department of the freight station at San Antonio. The Stetson Blouse Shop became insolvent. The plaintiff's assignor learned of this insolvency and on July 20, 1921, wired the defendant at San Antonio not to deliver the goods at the Stetson Blouse Shop. On July twenty-first the defendant answered by saying that the shipments were still on hand and asked for instructions for the disposition of the same. On the next day, July twenty-second, the defendant again wired the plaintiff's assignor to the effect that the Stetson Blouse Shop was ready to accept the merchandise and requested instructions as to its disposition. The plaintiff's assignor then endeavored to ascertain from the receiver of the Stetson Blouse Shop whether it would accept the goods and pay cash for them. On August 9, 1921, the plaintiff's assignor sent a

letter to defendant at San Antonio in which it was said: "We herewith instruct you to return these goods to us via freight to No. 47 Broome street, New York City, and we shall pay the charges due you." On August 26, 1921, the plaintiff's assignor again wrote to the defendant at San Antonio, inclosing a copy of the letter of August ninth, and requesting information as to the disposition of the goods. The defendant did not answer this letter of August ninth, but sent it to its representative in New York city for the purpose of interviewing the plaintiff's assignor as to the shipping charges. On August thirtieth the defendant wrote the plaintiff's assignor, acknowledging receipt of the letter of August twenty-sixth, and saying that the original letter of August ninth was received and forwarded to its representative in New York city. The letter concludes: "For your information will state these shipments have charges against them amounting to $137.49, and we will appreciate it if you will call on our New York representative and have them instruct us to return the shipments." There is an issue of fact between the parties as to whether this letter of August thirtieth was mailed directly to the plaintiff's assignor in New York city as claimed by the defendant or whether it was shown to the plaintiff's assignor for the first time on September 15, 1921, as testified by the plaintiff's assignor. This issue of fact is, in my opinion, not material to the question of law involved in this case. On September 9, 1921, an extraordinary overflow of the San Antonio river, caused by a cloudburst, inundated the business section of San Antonio and damaged the greater part of the shipments where they were stored in the on-hand department of the defendant. The principal question in this case is one of law. Its determination revolves around the letter of August 9, 1921. The theory of the plaintiff's cause of action is breach of contract. It is not claimed that the contract was an express one, but the contention seems to be that it is one to be implied in law. The plaintiff claims that the defendant was obliged as a matter of law in obedience to the letter of August ninth to return the shipments by freight to the plaintiff's assignor on the promise of the latter to pay the charges for the outward journey of the shipments to San Antonio. The contention of the defendant is that before the plaintiff's assignor could compel a return of the shipments it was obliged to do two things, *first*, to pay the charges of $137.49, which were due on the outward journey to San Antonio, and *second*, to pay the charges for the return of the shipments by freight as requested, such charges being a part of the filed classifications and schedules of the defendant. It may be noted that the letter of August ninth did not ask for a return of the shipments

52

by the defendant. It requested that they be returned through another agency, namely, as freight by a railroad carrier. The defendant had a lien on the shipments for the charges of the outward journey. It was not compelled to surrender its lien and return the goods by freight. The defendant had a right to demand the payment of these charges before it complied with the request of the plaintiff's assignor. It was the duty of the plaintiff's assignor to ascertain these charges and make a tender of them before it made a demand for the return of the shipments by freight. The plaintiff's assignor was obliged to comply with the provisions of the filed classifications of the defendant. These classifications were filed by the defendant pursuant to the Interstate Commerce Act. The contracts of shipment between the parties were made up of the uniform express receipts given to the plaintiff's assignor and the filed schedules and classifications of the defendant. *Strahs* v. *N. Y. C. R. R. Co.*, 113 Misc. Rep. 273. The shipments were interstate and so were subject to the federal act to regulate commerce, and the decisions of the federal courts are applicable and binding upon the parties. *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *C., B. & Q. Ry. Co.* v. *Miller*, 226 id. 513; *Southern R. Co.* v. *Prescott*, 240 id. 632; *M., K. & T. R. Co.* v. *Harriman*, 227 id. 657; *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534; *Barnet* v. *N. Y. C. & H. R. R. R. Co.*, 222 id. 195. The shipper is presumed to have notice of the filed classifications and to have contracted with reference to the same. *Adams Express Co.* v. *Croninger*, *supra; Kansas Southern R. Co.* v. *Carl*, 227 U. S. 639; *Kolb* v. *Taylor*, 102 Misc. Rep. 220. The provisions of the filed classifications applicable to these shipments are to be found on page 16, rule 12, subdivision D, paragraphs 1 and 3, plaintiff's Exhibit 5. These provisions set forth that in order that the shipments should be returned by freight the shipper must pay all charges for the outward journey and an additional charge of eleven cents per 100 pounds with a minimum charge of twenty-seven cents. It is evident that one of the purposes of the classifications is to protect the carrier's lien. It would be in violation of the federal act for the defendant to make a special contract with the plaintiff's assignor to return these shipments without a compliance with the filed classifications. To do so would be to extend a preferential advantage to the plaintiff's assignor, which was one of the abuses at which the federal act was aimed. *Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155; *Southern R. Co.* v. *Prescott*, *supra*. The plaintiff's assignor was called upon to ascertain the provisions of the filed classifications and to follow them strictly before it could demand from the defendant a return of the shipments by freight. *Georgia, Fla. & Ala. R. Co.* v. *Blish Co.*, 241 U. S. 190. It was due to the

failure of the plaintiff's assignor to comply with the filed classifications that the shipments remained in the on-hand department of the freight station. While they were in this freight station awaiting disposition a flood of unusual proportions destroyed the greater part of the goods. The defendant company cannot be held responsible for this damage for several reasons: *First*, because such is not the theory of liability; *second*, it was no fault of the defendant that the goods were kept at San Antonio, and *third*, the flood was clearly an act of God, which, according to the conditions of the express receipts, exonerated the defendant from responsibility.

It is not necessary, in my opinion, to pass upon the other questions involved in this case. Enough has been shown, I think, to demonstrate that the plaintiff has failed to establish a cause of action. It has so failed because, *first*, a demand was made for a service which was not provided for in the filed classifications and schedules, and *second*, because it did not comply with the provisions of the classifications for the service therein provided, and which provisions are conditions precedent to the obtaining of the service.

The plaintiff relies upon the case of *Hirsch* v. *Platt*, 89 N. Y. Supp. 362. It is very evident that this case is not applicable to the facts of the one at bar. It was a case decided long before the federal enactment applicable to the present situation was passed by the congress. Furthermore, in that case it clearly appears that a demand was made upon the defendant for the return of the shipment by the same agency, namely, the defendant; that the shipment was moved on its outward journey. The plaintiff also lays stress upon the contention that it was the duty of the defendant to notify the plaintiff's assignor that the consignee refused to accept the goods. It appears, however, from the evidence that the consignee never refused to accept the merchandise, but that it requested the defendant to keep the goods in its on-hand department until it was in a position to take the merchandise. Before such notification was received by the defendant the Stetson Blouse Shop became insolvent, and the plaintiff's assignor thereupon exercised his right to stop the delivery of the merchandise to the consignee.

After a careful review of the evidence I can find no theory of liability upon which the defendant might be held responsible for the loss of these shipments under the cause of action as set forth in the plaintiff's complaint.

At the close of the plaintiff's case, and again at the close of the entire case, motions were made to dismiss the complaint, upon which decision was reserved. The case was then allowed to go to the jury on certain questions of fact, which, upon reflection, are immaterial to the questions of law involved. The verdict of the

jury in plaintiff's favor on these questions of fact is, therefore, set aside, and the motions to dismiss the complaint are granted, with an exception to the plaintiff. There being no dispute that the charges for the outward shipments in the sum of $137.49 are owing to the defendant, judgment is directed to be entered on the counterclaim in favor of the defendant for such sum.

Five days' stay of execution.

Ordered accordingly.