MELVILLE FEYNMAN, Trading as M. FEYNMAN COMPANY, Plaintiff, *v.* AMERICAN RAILWAY EXPRESS COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, May 11, 1929.

Submission of controversy on agreed statement of facts.

*Teitelbaum & Jay* [*Louis Jay* of counsel], for the plaintiff.

*Charles C. Evans* [*John J. Monahan* and *Emmet L. Holbrook* of counsel], for the defendant.

Genung, J. The plaintiff is engaged in manufacturing and selling ladies' skirts in the city of New York. The defendant is an express company, engaged in the transportation of property for hire in interstate commerce.

For some time prior to September, 1920, a business was conducted at Washington and Delaware streets, in Indianapolis, Ind., under the name of Goldstein Bros., with a large credit rating. For some time prior to September, 1920, a business also was conducted in room 714 at No. 26 West Quincy street, Chicago, Ill., under the name of Goldstein Bros., and a branch store or office of the same concern was operated at 301 North Washington street, at Senate avenue, Indianapolis, Ind. Just prior to September 15, 1920, a man named A. B. Rosenberg engaged a room at 1182 Broadway in New York city and commenced buying merchandise for Goldstein Bros. On September 15, 1920, Rosenberg represented to the plaintiff that he was buying agent for Goldstein Bros., who were engaged in business in Indianapolis and Chicago, and ordered certain merchandise to be shipped by express to Goldstein Bros., at No. 26 West Quincy street, Chicago, Ill. The plaintiff accepted and filled the order. The facts just stated were not known by the defendant until this controversy arose.

On September 15, 1920, the plaintiff delivered to the defendant at New York city six packages, and on September 28, 1920, a single package, marked and addressed by the plaintiff to " Goldstein Bros., #26 W. Quincy Street, Chicago, Ill." Six of these packages were delivered by the defendant to Goldstein Bros. at 26 West Quincy street, Chicago, Ill. At the address given the concern, Goldstein Bros., was listed on the building directory as occupying room 714, the name also appearing on the door of that room. The contents of these six packages represented a total of $462.10, to recover which this suit is brought.

The receipts issued by the defendant to the plaintiff for these packages contained a clause providing that

" 4. Unless caused in whole or in part by its own negligence or that of its agents, the Company shall not be liable for loss, damage or delay caused by —

" (a) The act or default of the shipper or owner.   *   *   *

" (c) Improper or insufficient   *   *   *   addressing."

The principal inquiry is this: Do these clauses of the carrier's contract relieve it from responsibility under the circumstances stated above?

Manifestly the shipments were interstate commerce and hence the rights and liabilities in connection therewith depend upon the Federal act to regulate commerce, the receipts and the common-law principles accepted and enforced by the Federal courts. (*Southern Express Co.* v. *Byers*, 240 U. S. 612, 614; *Southern R. Co.* v. *Prescott*, Id. 632, 639, 640; *Kansas City Southern R. Co.* v. *Carl*, 227 id. 639, 649; *Adams Express Co.* v. *Croninger*, 226 id. 491; *Chicago, B. & Q. R. Co.* v. *Miller*, Id. 513, 518; *Missouri, Kansas & T. R. Co.* v. *Harriman*, 227 id. 657, 672; *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534, 538; *Barnet* v. *New York Central & H. R. R. R. Co.*, 222 id. 195, 198; *O. K. Display Fixture Co.* v. *American Railway Express Co.*, 121 Misc. 816, 818.)

The common-law duty of a common carrier is to transport and deliver safely. The rule of the common law does not limit his liability to loss and damage due to his own negligence, or that of his servants. The rule reaches beyond this, makes him an insurer against *all* failure to perform this duty and renders him responsible for any loss or damages which result from human agency, or any cause not the act of God or the public enemy. (*Adams Express Co.* v. *Croninger, supra; Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174, 181.) This liability may be lessened through any fair, reasonable and just agreement with his employers, if the limitations to his responsibility stipulated for, are, in the judgment of the law, reasonable, do not include exemption against his negligence or that of his servants, and are not inconsistent with sound public policy. The right of the carrier to protect himself from fraud and imposition by reasonable rules and regulations is correlative to his elementary right to receive a compensation commensurate to the risk assumed. (*Adams Express Co.* v. *Croninger, supra; Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331; *Bank of Kentucky* v. *Adams Express Co., supra.*)

The liability imposed by the Interstate Commerce Act, as amended, is the liability imposed by the common law. The object of the law was to bring contracts for interstate shipments under

one uniform rule of law, and, therefore, withdrew them from the influence of State regulation. The statutory liability, aside from the responsibility for the default of a connecting carrier in the route, is not beyond the liability imposed by the common law as that body of law applicable to carriers has been interpreted by the United States Supreme Court. Therefore, the common-law liability of a common carrier as an insurer of safe delivery to the proper consignee of the property carried, still attaches where the subject of the shipment is interstate commerce. (*Cincinnati, N. O. & T. P. R. Co.* v. *Rankin*, 241 U. S. 319, 326; *Kansas City Southern R. Co.* v. *Carl, supra; Adams Express Co.* v. *Croninger, supra.*)

While the liability of a common carrier is always presumed to be its common-law liability (*New Jersey Steam Navigation Co.* v. *Merchants' Bank of Boston*, 6 How. 344), nevertheless it is conceded in this case that the shipments in question moved subject to the provisions of the uniform express receipt prescribed by the Interstate Commerce Commission (*Matter of Express Rates*, 28 I. C. C. 131, 138; *Matter of Express Rates, etc.*, 43 id. 510; *Matter of Bills of Lading*, 52 id. 671) and forming part of the official classification and schedules of the defendant on file with the Commission as required by the act. As such they form part of the regulations of the carrier and, therefore, part of the rate. (*American Railway Express Co.* v. *Lindenburg*, 260 U. S. 584; *Southern R. Co.* v. *Prescott, supra*, 638; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97, 111; *Kansas City Southern R. Co.* v. *Carl, supra*, 654.) The receipts issued by the defendant for the shipments herein involved, together with the classification and schedules on file with the Commission, constitute the contracts of carriage. (*Burke* v. *Union Pacific R. R. Co., supra; O. K. Display Fixture Co.* v. *American Railway Express Co., supra; Strahs* v. *New York Central R. R. Co.*, 113 Misc. 273.)

The provisions of the contracts quoted above are clearly stipulations against a carrier's common-law liability. They expressly avoid exemption from the carrier's negligence or that of his servants, and, forming part of the receipt prescribed by the Interstate Commerce Commission, they cannot, in the absence of proof to the contrary be said to be unjust or unreasonable, or to offend against sound public policy. Therefore, under the rule as stated, they are valid restrictions upon the defendant's responsibility to the plaintiff.

It is conceded that the plaintiff addressed the packages to " Goldstein Bros., 26 W. Quincy Street, Chicago, Ill.," and that such was the address to which they were ordered to be sent by the plaintiff. Ordinarily, an express company is required to deliver the property to the consignee at his residence or place of business. (*Witbeck* v. *Holland*, 45 N. Y. 13; *Sweet* v. *Barney*, 24 Barb. 533;

affd., 23 N. Y. 335.) The defendant was not informed that two such concerns were engaged in business in Indianapolis, Ind., nor that the plaintiff might be confused as to their identity or responsibility or intend the shipments for the one other than the addressee given on the packages and in the receipts. In accordance with the directions on the parcels, the defendant delivered them personally to the concern "Goldstein Bros." at the place where this firm concededly conducted its business, viz., "26 W. Quincy St., Chicago, Ill.," the address placed upon the parcels by the plaintiff. Concededly also, but without the defendant's knowledge, the merchandise had been ordered by a representative or buyer of this very firm. Negligence on the part of the defendant carrier cannot be concluded from the stipulated facts. The plaintiff's loss, therefore, results directly from his own act as shipper in improperly addressing the packages. Exemption from responsibility for such a loss is clearly within the purview of the provisions of the carrier's contract quoted above.

The plaintiff relies upon *Pacific Express Co.* v. *Shearer* (160 Ill. 215); *Southern Express Co.* v. *Ruth & Son* (183 Ala. 493); *Bond Trouser Co.* v. *American Railway Express Co.* (124 Misc. 619); *Fox River Butter Co.* v. *Lightning Motor Line* (125 id. 116). In the *Shearer* case the express company had delivered a package of money to an impostor who deceived the company's agents as to his identity. The company contended that if its agent made reasonable efforts and exercised reasonable and ordinary care and diligence to ascertain the identity of the person to whom delivery was made and did not know such person was not the addressee of the package, the express company was not liable (pp. 219, 220). The Supreme Court of Illinois held (p. 222) that the law "requires at the hands of the carrier absolute certainty that the person to whom the delivery is made is the real person to whom the goods have been consigned, and the carrier cannot escape liability on the ground that deception, imposition or fraud may have been resorted to by an impostor to obtain from the agent of the carrier the goods entrusted to its care." This same rule was applied in *Southern Express Co.* v. *Ruth & Son* (*supra*). In *Bond Trouser Co.* v. *American Railway Express Co.* (*supra*) an impostor in San Francisco, Cal., had fraudulently ordered merchandise from the plaintiff in New York city. Three days after the property had been shipped through the defendant express company the plaintiff discovered the fraud and immediately warned the express company in New York city and, by telegrams, in San Francisco. Two days subsequent thereto the express company's agents delivered the property to the impostor at San Francisco under suspicious cir-

cumstances, despite the plaintiff's warning and demand that it be stopped *in transitu* and returned. The facts and principles applied there have no bearing on this case. In *Fox River Butter Co.* v. *Lightning Motor Line* (*supra*) the court laid down the rule that where the fraud is practiced upon the shipper the rule as stated in *Pacific Express Co.* v. *Shearer* and *Southern Express Co.* v. *Ruth & Son* has no application and the carrier cannot be compelled to respond for the resulting damages. Fraud upon the shipper and not upon the defendant carrier is more forcefully shown by the conceded facts in the present case than was proven in the *Fox River Butter* case. Nevertheless, in view of the established principles applying to common carriers of interstate commerce subject to the Federal act as stated in the decisions of the United States Supreme Court cited above, it is doubtful whether the ruling in *Fox River Butter Co.* v. *Lightning Motor Line* (*supra*) has any application here. The decisions relied on by the plaintiff in no way involved the limitations of a special contract of carriage. It seems obvious that the purpose of the Commission in permitting the clauses quoted above to be included in the prescribed form of express receipt was to establish a uniform rule which would relieve the carriers subject to the Federal act from the rigor of the responsibility imposed by the common law under circumstances such as in the instant case where the loss has resulted directly from the shipper's act in improperly addressing the packages and without any negligence on the part of the carrier or its servants contributing thereto.

Judgment is directed in favor of the defendant dismissing the complaint on the merits.