GRAND TRUNK WESTERN RAILROAD COMPANY, Plaintiff, *v.* ANDREW MAKRIS and Others, Copartners Doing Business under the Firm Name and Style of ANDREW MAKRIS & BROTHERS, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, February 25, 1932.

*Vernon C. Ryder*, for the plaintiff.

*Wilson & Frost*, for the defendants.

GENUNG, J. This case was tried before the court without a jury on oral testimony, depositions and stipulated facts.

The plaintiff is a railroad corporation engaged in interstate commerce in the general territory of Chicago, Ill. The defendants are wholesalers, among other things, of olives in the city of New York. On February 10, 1928, at New York city, the defendants shipped in car C. & O. 84862 sixty barrels of olives to Kokenes & Company at Chicago, Ill. The shipment originated with the Lehigh

Valley Railroad Company at New York and was delivered by the plaintiff as a connecting and delivering carrier within the meaning of the Interstate Commerce Act, as amended (U. S. Code, tit. 49, § 20, subd. 11). The shipment arrived at Chicago on February 15, 1928, but delivery was not taken by the consignee until February 29 and March 1, 1928. The plaintiff failed to collect the freight and storage charges upon delivery and subsequently demanded payment of the same from the consignee. In June, 1928, the plaintiff brought suit in the Chicago Municipal Court against Kokenes & Company and recovered judgment for the charges. Kokenes & Company thereafter became bankrupt and the judgment and charges have never been paid.

The plaintiff gave the defendants no notice of these facts until November 22, 1929, a concededly " unreasonable time," when a demand was made on defendants for payment of the charges. Defendants declined to pay and plaintiff brings this action to enforce collection.

The shipment was made under an order bill of lading, the form of which was prescribed by the Interstate Commerce Commission and in which the defendants were named as shippers or consignors and consignees, with directions to notify Kokenes & Company. The bill of lading was signed and indorsed by the defendants and forwarded to Kokenes & Company in Chicago together with a draft for the purchase price of the shipment. The draft was paid by Kokenes & Company who thereby secured the bill of lading and surrendered the same to the plaintiff in order to secure delivery. The freight charges on the shipment were not prepaid but it moved as what is usually termed a " collect " shipment. The plaintiff claims that the defendants are liable under the terms of the bill of lading.

The defendants claim that as shippers they are not primarily liable for the charges; that at most they are merely sureties therefor, and that the unreasonable delay and actions on the part of the plaintiff released the defendants from liability and estopped the plaintiff from recovering in this action; that by accepting the shipment as a " collect " shipment the carrier agreed to hold only the consignee for the charges, and that in any event the defendants are not liable for the storage charges which accrued by reason of the failure of Kokenes & Company to take delivery upon arrival of the shipment at destination.

This case necessarily turns on the interpretation of and effect to be given to the agreement between the parties. The shipment is one in interstate commerce and, therefore, the rights and liabilities of the parties depend on the Federal act to regulate commerce

among the several States, the bill of lading and the common-law principles accepted and enforced by the Federal courts. (*Feynman* v. *American Ry. Exp. Co.*, 134 Misc. 223, 225; *Southern Exp. Co.* v. *Byers*, 240 U. S. 612, 614; 36 S. Ct. 410; 60 L. Ed. 825; L. R. A. 1917A, 197; *Southern Ry. Co.* v. *Prescott*, 240 U. S. 632, 639, 640; 36 S. Ct. 469; 60 L. Ed. 836; *Kansas City So. Ry. Co.* v. *Carl*, 227 U. S. 639, 649; 33 S. Ct. 391; 57 L. Ed. 683; *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491; 33 S. Ct. 148; 57 L. Ed. 314; 44 L. R. A. [N. S.] 257; *Chicago, B. & Q. Ry. Co.* v. *Miller*, 226 U. S. 513, 518; 33 S. Ct. 155; 57 L. Ed. 323; *Missouri, Kansas & T. Ry. Co.* v. *Harriman Bros.*, 227 U. S. 657, 672; 33 S. Ct. 397; 57 L. Ed. 690; *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534, 538; *Barnet* v. *New York C. & H. R. R. R. Co.*, 222 id. 195, 198; *O. K. Display Fixture Co.* v. *American Railway Exp. Co.*, 121 Misc. 816, 818.) Under the Interstate Commerce Act, as amended, the delivering carrier of an interstate shipment for all practical purposes stands in the same position as the initial carrier. (Int. Com. Act [U. S. Code, tit. 49], § 20, subd. 11.) The bill of lading together with the filed tariffs of the plaintiff constitute the contract of carriage. (*Feynman* v. *American Railway Exp. Co.*, *supra*, 731; *Burke* v. *Union Pacific R. R. Co.*, *supra*; *O. K. Display Fixture Co.* v. *American Railway Exp. Co.*, *supra*; *Strahs* v. *New York C. R. R. Co.*, 113 Misc. 273.) The consignor of a shipment is ordinarily and primarily liable for freight charges. He requires the carrier to perform the services when he delivers the goods for transportation and thereby obligates himself to pay therefor and the carrier may neglect to collect the charges from the consignee and collect them from the consignor. (*New York Central R. R. Co.* v. *Fed. Sugar Ref. Co.*, 235 N. Y. 182, 187; *New York Central R. R. Co.* v. *Ross Lumber Co.*, 234 id. 261, 264.) But the parties are free to agree between themselves as to who shall pay the freight charges on the shipment. In the absence of an express statute or regulatory order of the Interstate Commerce Commission, a carrier subject to the Interstate Commerce Act is not prohibited from agreeing to hold the consignee solely responsible for the charges on an interstate shipment and releasing the consignor from all obligations therefor. (*Louisville & Nashville R. R. Co.* v. *Central Iron Co.*, 265 U. S. 59, 67.)

The bill of lading under which this shipment was made, and which together with the filed tariffs constituted the contract of carriage, specifically provided: " The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such

stipulation, shall make delivery without requiring such payment, the consignor shall not be liable for such charges." (Bill of Lading, § 7.)

It also provided on the face thereof the following: "If this shipment is to be delivered to the consignee without recourse to the consignor, the consignor shall sign the following statement:

"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (See Section 7 of Conditions.)                    (.......................)"

*" Signature of Consignor."*

The above statement was not signed by the consignor of this shipment.

It is plain, therefore, that the agreement contemplated a liability on the part of the consignor for all lawful charges of the carriers in connection with this shipment. The terms and conditions of the bill of lading could not be waived by any act on the part of the carriers. (*Georgia, Florida & Ala. Ry. Co.* v. *Blish Milling Co.,* 241 U. S. 190; *N. Y. Central R. R. Co.* v. *Fed. Sugar Ref. Co., supra.*)

The bill of lading also provided: "Sec. 4 (a) Property not removed by the party entitled to receive it within the free time allowed by tariffs, lawfully on file (such free time to be computed as therein provided), after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given and after placement of the property for delivery at destination has been made, may be kept in vessel, car, depot, warehouse or place of delivery of the carrier, subject to the tariff charge for storage and to carrier's responsibility, as warehouseman, only, or at the option of the carrier, may be removed to and stored in a public or licensed warehouse at the place of delivery or other available place, at the cost of the owner, and there held without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

Concededly the storage charges are those lawfully assessed under the tariffs filed by the plaintiff with the Interstate Commerce Commission. There was no new agreement made by the plaintiff with Kokenes & Company to store the property at destination for their benefit or account. Kokenes & Company merely did not call for the shipment for a period of approximately two weeks after its arrival at destination and there is nothing in the evidence from which an agreement can be spelled out between the plaintiff and Kokenes & Company that the same was being held by the plaintiff for or on their account. Furthermore, under the provisions of the bill of lading quoted above the consignor is held liable for " all

lawful charges " accruing against the shipment, and inasmuch as these provisions could not be waived by any act or omission on the part of the carrier the defendants here are fully responsible.

Judgment is, therefore, directed in favor of the plaintiff for the sum of $150.47 freight charges and $33.21 storage charges, or a total of $183.68, together with interest from March 1, 1928.

Ten days' stay of execution.