JAMES J. E. BURKE, Appellant, *v.* UNION PACIFIC RAILROAD COMPANY, Respondent.

Carriers — transportation by ocean carriers between the United States and non-adjacent foreign countries not affected by Interstate Commerce Act — limitation of recovery for loss of freight in interstate commerce must be in accordance with filed schedules of rates and charges — agreed valuation valid and effective only when related to rate charged for transportation — shipper not estopped by declaration concerning value which in no way affected the tariff or conduct of the carrier — choice of rates must be made to appear.

1. Transportation by ocean carriers between the United States and non-adjacent countries is not included in or affected by the act to regulate commerce and the jurisdiction of the interstate commerce commission or the classification and schedule of rates and charges, pursuant to the act, cannot extend to carriers engaged in that transportation.

2. The permissibility of limiting the recovery, in case of liability, to a valuation of the freight agreed upon or declared by the shipper is conclusively established, but an agreed or released valuation is valid and effective as the extent of a loss only when it is related to the rate charged for transportation. The shipper cannot be estopped by an agreement or declaration concerning value which in no way or extent affected the tariff or conduct of the carrier. The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of the agreed valuation limitation and relief from full liability.

3. The duly established and filed rates are absolutely binding upon all persons who are parties to a contract of interstate transportation.

They have the force of a statute and cannot be varied under any pretext, nor can any party lawfully depart from them.

4. Goods, consisting of fifty-six cases, of the invoice value of over $17,000, were delivered at Yokohama, Japan, to the Pacific Mail Steamship Company for transportation to New York city. A bill of lading was delivered by the company to and accepted by the shippers. It contained the provision: " It is expressly agreed that the goods named in this Bill of Lading are hereby valued at not exceeding $100.00 per package, and unless a different or other value is expressly written and declared herein, the liability of the Companies therefor, in case of the total loss of all or any of the said goods from any cause, shall not exceed $100.00 per package, * * *." It did not express or declare a different value. The goods were subsequently delivered to the defendant, as a connecting carrier, and were totally destroyed while being transported over its railroad. The filed classifications and schedules did not sanction the right of the parties to fix the agreed valuation as a limitation upon the extent of the liability of the connecting carriers. By force of provisions of the classification, a uniform bill of lading was a part of the classification and related to and governed the terms of the transportation eastward from San Francisco. It provided: " The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based." It fixed the same rate for transportation as was fixed by the original bill of lading — a lesser rate for a valuation less than the value of the property was not prescribed or presented to the shipper nor was there a rate adjustable to the agreed valuation in the original bill of lading. *Held*, that although the uniform bill of lading declared that an agreed lower valuation should be the maximum amount to govern the computation of any loss or damage, a lower rate is not offered to or obtainable by the shipper because of it. There is no basis of an estoppel as against him, and the plaintiff, as assignee, was entitled to recover the invoice value of the goods.

*Burke* v. *Union Pacific R. R. Co.*, 178 App. Div. 783, reversed.

(Argued May 2, 1919; decided July 15, 1919.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial

department, entered July 31, 1917, in favor of plaintiff upon the submission of a controversy pursuant to section 1279 of the Code of Civil Procedure.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Arthur W. Clement* and *Wilson E. Tipple* for appellant. From San Francisco to New York this shipment was interstate commerce and was subject to the provisions of the Interstate Commerce Act.    (*Texas & Pacific Ry.* v. *Interstate Commerce Commission,* 162 U. S. 197; *Armour Packing Co.* v. *United States,* 209 U. S. 56; *Lehigh Valley R. R.* v. *United States,* 243 U. S. 444.)    The Interstate Commerce Act requires that the tariffs filed by the defendant should set forth every condition upon which this shipment was transported.    (*S. P. Ry. Co.* v. *Prescott,* 240 U. S. 632; *C. & A. R. R. Co.* v. *Kirby,* 225 U. S. 155.)    This shipment having moved under a duly established tariff and rate, the terms of defendant's tariff are binding upon both shipper and carrier and exclusively determine the contract under which this shipment moved. (*A. S. R. Co.* v. *D., L. & W. R. R. Co.,* 207 Fed. Rep. 733; *C., R. I. & P. Ry. Co.* v. *Cramer,* 232 U. S. 490; *A., T. & S. F. Ry. Co.* v. *Robinson,* 233 U. S. 173; *M., K. & T. R. R. Co.* v. *Harriman,* 227 U. S. 657; *Georgia Ry. Co.* v. *Blish Mfg. Co.,* 241 U. S. 190; *G. N. Ry. Co.* v. *O'Connor,* 232 U. S. 508; *D' Utassy* v. *S. P. Ry. Co.,* 174 App. Div. 574.)    Even if the $100 limitation of the Japanese bill of lading be called a " value agreed upon " within the meaning of the uniform bill of lading, nevertheless the $100 limitation would still be void and unenforcible because it is not supported by a difference in freight rates based upon the valuation declared. (*Hart* v. *Penn. R. R. Co.,* 112 U. S. 331; *Boyle* v. *Bush Ter. R. R. Co.,* 210 N. Y. 389; *Adams Express Co.* v. *Croninger,* 226 U. S. 491; *B. & M. R. R.* v. *Piper,* 246 U. S. 439; *G., etc., R. Co.* v. *Blish Mfg. Co.,* 241 U. S. 190.)

*Oscar R. Houston* for respondent. The value of the shipment had been agreed upon between the shipper and the carrier. Such valuation is binding upon the parties, unless it is made illegal by the Interstate Commerce Act. (*Hart* v. *Pennsylvania Railroad Co.*, 112 U. S. 331; *Greenwald* v. *Barrett*, 199 N. Y. 170; *Boyle* v. *Bush Terminal R. R. Co.*, 210 N. Y. 389; *D' Utassy* v. *Barrett*, 219 N. Y. 420; *Whitworth* v. *Erie Ry. Co.*, 87 N. Y. 413; *Hachadoorian* v. *L. & N. R. R. Co.*, 128 App. Div. 171; *White* v. *Weir*, 33 App. Div. 145; *Woodruff* v. *Havemeyer*, 106 N. Y. 129; *R. R. Co.* v. *Androscoggin Mills*, 22 Wall. 594.) The Interstate Commerce Act has not made an agreed valuation illegal. (*Greenwald* v. *Barrett*, 199 N. Y. 170; *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *D' Utassy* v. *S. P. Co.*, 174 App. Div. 547; *Kansas Southern Ry. Co.* v. *Carl*, 227 U. S. 639; *N. Y. C. R. R. Co.* v. *Beaham*, 242 U. S. 148; *Southern Express Company* v. *Byers*, 240 U. S. 612; *Southern Ry.* v. *Prescott*, 240 U. S. 632; *Ga., Fla. & Ala. Ry.* v. *Blish*, 241 U. S. 190.) The fact that the filed tariffs did not provide for a different rate dependent upon the valuation declared on the shipment makes no difference. (*Boyle* v. *Bush T. R. R. Co.*, 210 N. Y. 389.)

Collin, J. The plaintiff, in virtue of an assignment vesting in him the right, seeks to recover the sum of the invoice price or value of goods destroyed while in the possession of the defendant as a common carrier, to wit, the sum of $17,549.01. The defendant, conceding a liability, asserts that, because of the agreed valuation of the goods and a corresponding limitation, it does not exceed the sum of $5,600. The Appellate Division gave the plaintiff judgment for the latter sum, with interest.

The goods, consisting of fifty-six cases, were delivered, March 10, 1915, at Yokohama, Japan, to the Pacific Mail Steamship Company for transportation to New York city, to be there delivered to the shippers' order. A

bill of lading was then and there delivered by the company to and accepted by the shippers. It contained the provision: " It is expressly agreed that the goods named in this Bill of Lading are hereby valued at not exceeding $100.00 per package, and unless a different or other value is expressly written and declared herein, the liability of the Companies therefor, in case of the total loss of all or any of the said goods from any cause, shall not exceed $100.00 per package, * * *." It did not express or declare a different value. The goods at San Francisco were by the company delivered to the Southern Pacific Company, as a connecting carrier, which delivered them to the defendant, as a connecting carrier, and were totally destroyed while being transported by the defendant. Their invoice value was $17,549.01. No part of the freight was paid. We are to determine whether or not the liability of the defendant is limited by the agreed valuation.

The Southern Pacific Company, the defendant and the other inland carriers were, of course, subject to the federal act to regulate commerce, and had duly established and filed with the interstate commerce commission certain classifications, tariffs and schedule of rates which were applicable to the transportation from San Francisco to New York city. (*Armour Packing Co.* v. *United States*, 209 U. S. 56, 77.) The transportation from San Francisco being interstate, the laws of Congress and the decisions of the United States Supreme Court are, of course, so far as applicable, binding. (*Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Chicago, Burlington & Q. Ry. Co.* v. *Miller*, 226 U. S. 513.) The Carmack Amendment of January 29, 1906, declared that any common carrier receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and denied to an initial carrier the former right to make a contract limiting its liability to its own line. Beyond controversy

transportation by ocean carriers between the United States and non-adjacent foreign countries is not included in or affected by the act to regulate commerce and the jurisdiction of the interstate commerce commission or the classification and schedule of rates and charges, pursuant to the act, cannot extend to carriers engaged in that transportation. (*Cosmopolitan Shipping Co.* v. *Hamburg-American Packet Co.*, 13 Interstate Com. Commission Rep. 266; *Chamber of Commerce of N. Y.* v. *N. Y. C. & H. R. R. R. Co.*, 24 Interstate Com. Commission Rep. 55.) Interstate rates and charges to and from ports of entry must be published and filed as independent from the ocean transportation. Ocean transportation may be conducted under through bills of lading, issued at a foreign port, but the classifications and schedules of rates and charges of the inland carrier or carriers must be limited to inland transportation and services and cannot relate to liability, service or obligation of the ocean carrier. (*Armour Packing Co.* v. *United States*, 209 U. S. 56, 77; *Pacific Mail S. S. Co.* v. *Western Pacific R. Co.*, 251 Fed. Rep. 218.)

The bill of lading delivered by the steamship company was a through bill, issued, manifestly, in arrangement with and in the behalf of the inland connecting carriers. The rate for the inland transportation was stated in it separately from that of the ocean transportation and as one hundred and twenty-five cents per one hundred pounds in minimum carloads of thirty thousand pounds. Such was the rate fixed for the inland transportation by the classifications and schedule of rates and charges established and duly filed by the inland carriers. The bill of lading contained this clause: "In consideration of the rate of freight herein named it is hereby stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, on the face and on the back hereof, and said conditions are hereby agreed to by the shipper and by him accepted for himself

and assigns as just and reasonable." The agreed valuation of the goods at one hundred dollars per package and limiting the liability of the companies to a sum not exceeding that valuation was a condition of the bill. The filed classifications and schedules did not contain an agreed valuation, controlling, in form, the shippers' recovery in case the goods were lost, similar to that I have quoted from the bill of lading. No bill of lading other than that delivered to the shippers by the steamship company was issued.

The permissibility of limiting the recovery, in case of liability, to a valuation of the freight agreed upon or declared by the shipper is conclusively established. (*Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Robinson*, 233 U. S. 173; *D' Utassy* v. *Barrett*, 219 N. Y. 420; *Boyle* v. *Bush Terminal R. R. Co.*, 210 N. Y. 389.) The Cummins Amendment relating to the permissibility need not be heeded here because it was not effective prior to June 2, 1915, and the goods were shipped March 10, 1915. The permissibility must, however, be shown or declared by the established and filed classifications and schedule of rates and charges, and in accordance with them invoked and executed. (*Southern Ry. Co.* v. *Prescott*, 240 U. S. 632.)

The liability of the defendant is not and, under the Carmack Amendment, could not be questioned. (*Boston & Maine Railroad* v. *Hooker*, 233 U. S. 97; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas Packing Co.*, 244 U. S. 31.) The plaintiff asserts and argues that the agreed valuation in the instant case, if there was an agreed valuation, was not valid and effective, because the charge made for the inland transportation was not based upon the agreed valuation. The plaintiff states in his brief: " It is a fixed requirement of all the Federal decisions that an ' agreed valuation ' to be valid must be supported by a freight rate based upon it, or, in other words, the

shipper must have obtained a lower freight rate in consideration of agreeing to the limited valuation of his shipment." In judicial opinion and decisions there is support for the assertion of the appellant. In a leading case (*Hart* v. *Penn. R. Co.*, 112 U. S. 331) the plaintiff, a shipper, sought to recover of the defendant, a carrier, the market value of horses killed or injured in transportation under a bill of lading containing an agreed valuation as the extent of liability. The court said: " It must be presumed from the terms of the bill of lading, and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that, as the rate of freight expressed is stated to be on the condition that the defendant assumes a liability to the extent. of the agreed valuation named, the rate of freight is graduated by the valuation. * * * The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations." The doctrine that an agreed valuation, when made the basis for a rate, is given effect in measuring the damages and limiting the shipper's recovery, was not abrogated or changed by the Carmack Amendment. (*American Express Co.* v. *United States Horse Shoe Co.*, 244 U. S. 58, 62; *Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278; *Kansas City So. Ry. Co.* v. *Carl*, 227 U. S. 639; *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Chicago, R. I. & Pac. Ry. Co.* v. *Cramer*, 232 U. S. 490; *Western Transit Co.* v. *Leslie & Co.*, 242 U. S. 448; *Boyle* v. *Bush Terminal*

*R. R. Co.*, 210 N. Y. 389; *D'Utassy* v. *Barrett*, 219 N. Y. 420; *Moore* v. *Duncan*, 237 Fed. Rep. 780.) Stipulations for an agreed value, when made the basis for the rate, are not agreements for exemptions from negligence, and are given effect upon the ground of estoppel. (*Boston & Maine Railroad* v. *Piper*, 246 U. S. 439; *D'Utassy* v. *Barrett*, 219 N. Y. 420.) The validity of a contract limiting the carrier's liability to an agreed valuation does not depend upon the relation of that value to the actual value. It rests upon the proposition that, by freely and deliberately electing to contract for carriage at a rate of compensation based upon an agreed value, the shipper is estopped to claim a higher value in case the shipment is lost or destroyed. (*Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278, 283; *Kansas City So. Ry. Co.* v. *Carl*, 227 U. S. 639; *Boston & Maine Railroad* v. *Piper*, 246 U. S. 439.) Under this proposition and the authorities the agreed or released valuation is valid and effective as the extent of a loss only when it is related to the rate charged for transportation. The shipper cannot be estopped by an agreement or declaration concerning value which in no way or extent affected the tariff or conduct of the carrier. The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of the agreed valuation limitation and relief from full liability. (*Cincinnati, New Orleans & Texas Pac. Ry.* v. *Rankin*, 241 U. S. 319, 327.)

We are thus brought to the ultimate and determinative question whether or not the facts in the case at bar disclose a relation between the agreed valuation and the rate charged. The bill of lading declared in the parts we have already quoted a relation, that is, in consideration of the rate of freight the valuation is agreed upon as a condition of the transportation. It fulfilled the requirement of the Carmack Amendment that the initial carrier shall issue a bill of lading. It contains agreements of the parties, intended manifestly to bind the connecting

carriers, and it and the filed classifications and schedules constitute the entire contract under which the inland or rail transportation is performed. Any provision in it inconsistent with a content of the classifications or schedules is void. It is not now open to discussion that the duly established and filed rates are absolutely binding upon all persons who are parties to a contract of interstate transportation. They have the force of a statute. They cannot be varied under any pretext. No party can lawfully depart from them. (*Louisville & Nashville Railroad* v. *Maxwell*, 237 U. S. 94, 97; *Dayton Coal & Iron Co., Ltd.*, v. *Cincinnati, New Orleans & Texas Pac. Ry.*, 239 U. S. 446; *Erie Railroad Co.* v. *Stone*, 244 U. S. 332.) The filed classifications and schedules did not sanction the right of the parties to fix the agreed valuation as a limitation upon the extent of the liability of the connecting carriers. By force of provisions of the classification, which need not here be set out at length, the uniform bill of lading, " Straight," was a part of the classification and related to and governed the terms of the transportation eastward from San Francisco. The classification created, in effect, the alternatives of shipping from San Francisco under (a) the straight uniform bill of lading at the rate and upon the conditions named in it, or (b) " the liability imposed upon common carriers by common law and the federal and state statutes applicable thereto, * * * and the rate charged therefor will be ten per cent. (10%) higher (subject to a minimum increase of one (1) cent per one hundred pounds) than the rate charged for property shipped subject to all the terms and conditions of the Uniform Bill of Lading." The uniform bill of lading, under which, as we have stated, the goods moved from San Francisco, provided: " The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona-fide* invoice price, if any, to the consignee, including the freight

charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence." It fixed the one rate of one hundred and twenty-five cents per one hundred pounds, carload lots of a minimum of thirty thousand pounds, that is, the same rate as was fixed by the original bill of lading. A lesser rate for a valuation less than " the value of the property being the *bona-fide* invoice price, if any, to the consignee, including the freight charges, if prepaid at the place and time of shipment under this bill of lading " was not prescribed or presented to the shipper. There was not a rate adjustable to the agreed valuation in the original bill of lading. There was no relation between that valuation and the rate fixed in the uniform bill of lading and the original bill of lading. The agreed valuation worked no change in the situation of the connecting carriers. The rate was made relative to another and different valuation, namely, the valuation prescribed in the uniform bill of lading. There was neither two or more rates based upon valuation nor the opportunity for a valuation by the shipper for the purpose of the rate and the liability. In this it differs from the case of *Cleveland, Cincinnati, Chicago & St. Louis Ry.* v. *Dettlebach* (239 U. S. 588) in which the trial court found as a fact that the shipper by consenting to the limited valuation received a consideration in the shape of a substantial reduction in the freight rate. While the provision of the straight uniform bill of lading we have quoted declared that an agreed lower valuation shall be the maximum amount to govern the computation of any loss or damage a lower rate is not offered to or botainable by the shipper because of it. There is not

the basis of an estoppel as against him. Under the principle and authorities we have stated the plaintiff was entitled to recover the invoice value of the goods.

We find nothing relevant to this phase of the problem in the case of *Reid* v. *Fargo* (213 Fed. Rep. 771; 241 U. S. 544), upon which the respondent relies. There was there no interference, through classification or schedules, with the initial and only bill of lading. Ocean transportation alone was involved. The bill of lading declared: " It is also mutually agreed that the value of each package shipped hereunder does not exceed $100, or its equivalent in English currency, on which basis the freight is adjusted, and the carrier's liability shall in no case exceed that sum, unless a value in excess thereof be specially declared, and stated herein, and extra freight as may be agreed on paid." Proof in contradiction of this statement was not offered. Where a bill of lading duly delivered and accepted declares that lawful alternate rates based on specified values were offered, such declaration constitutes an admission by the shipper and sufficient *prima facie* evidence of choice. (*Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin*, 241 U. S. 319.)

The judgment should be reversed and judgment rendered in favor of the plaintiff and against the defendant for the sum of seventeen thousand, five hundred and forty-nine dollars and one cent, with interest from March 10, 1915, with costs in this court and in the Appellate Division.

CHASE, CUDDEBACK, MCLAUGHLIN and ANDREWS, JJ., concur; HOGAN, J., dissents; CRANE, J., not sitting.

Judgment accordingly.