William Stevens, Plaintiff, *v.* The Atchison, Topeka and ` Santa Fe Railway Company, Defendant.

First Department, December 14, 1923.

Common carriers — carriers of goods — initial carrier issued bills of lading for shipment of cotton from points in Texas to San Francisco and thence to Japan at rate of one dollar and eighty-five cents per 100 — cotton was injured by fire and water while on pier in San Francisco — steamship company refused to accept shipment — plaintiff makes no claim for damages but claims that defendant, last rail carrier, is not entitled to freight from point of shipment to San Francisco — contention that ʹinland freight service was not completed is untenable — initial carrier could not contract to transport cotton at inland rate payable only on delivery in Japan — such contract violative of Interstate Commerce Act — defendant entitled to inland freight — bills of lading construed not to contravene statute.

On the submission of a controversy upon an agreed statement of facts in which the court is asked to determine the rights of the parties to moneys held by a disinterested third person, it appears that the initial carrier issued bills of lading for cotton which provided for shipment from points in Texas to San Francisco and thence by steamship to Japan upon the payment of one dollar and eighty-five cents per 100 pounds as freight for the entire transportation; that the cotton was injured by fire and water while in the cars which were standing on a pier in San Francisco; that the steamship company refused to accept the cotton for transportation to Japan after the injury thereto; that the plaintiff contends that the defendant, the last rail carrier, is not entitled to any payment for transportation from the points of shipment to San Francisco, since the bills of lading were through bills of lading and constituted a single indivisible contract for the entire transportation and as the defendant had not performed its contract it could not recover, and the plaintiff contends also that the inland freight service had not been completely rendered by the defendant inasmuch as the cotton at the time it was injured had not been delivered to the steamship but was still in the possession of the defendant.

*Held,* that plaintiff's assertion that the inland freight service as to the salvaged bales of cotton had not been completely rendered by the defendant is without merit, since there is no claim against the defendant for damage to the cotton, and since it appears that the defendant unloaded the cotton, tendered it to the steamship company and after its refusal by the steamship company tendered it to the owner.

The initial carrier, by virtue of the Interstate Commerce Act and under the tariffs established in accordance therewith, was without power to agree for the transportation of the cotton to Japan, at any rate, since there was no public tariff for the carriage, and if the bills of lading can be construed as providing for one indivisible charge of one dollar and eighty-five cents for the entire transportation, then their provisions to that extent are void as contravening the provisions of the statute, and, therefore, the defendant is entitled to recover the freight charge for the inland transportation.

Moreover, the bills of lading are not necessarily to be regarded as an attempt to contravene the statute, since they provide for two separate stages of trans-

portation, *first*, from the point of shipment to San Francisco and, *second*, from San Francisco to Japan and. as thus construed, they are not violative of the Interstate Commerce Act.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Bigham, Englar & Jones* [*George S. Brengle* of counsel], for the plaintiff.

*A. S. H. Bristow* of counsel, for the defendant.

MARTIN, J.:

The court is asked to determine the rights of the parties to moneys held by disinterested third persons, Johnson & Higgins, brokers, of San Francisco, Cal.

The claim of defendant, the Atchison, Topeka and Santa Fe Railway Company, is that the fund is due to it for the transportation of cotton from various points in Texas to San Francisco, Cal. Plaintiff's claim is as shipper and owner, he being the assignee of the Japan Cotton Trading Company, which shipped from said points 500 bales of cotton consigned to Kobe, Japan, by way of San Francisco, Cal., to be delivered at Kobe to the shipper's order. The cotton was delivered by the shipper to the Gulf, Colorado and Santa Fe Railway Company, which issued export bills of lading covering the shipments from points in Texas to Kobe, Japan, by way of San Francisco, Cal., the charge therefor, one dollar and eighty-five cents per 100 pounds, being indicated in the bills of lading as made upon an inland rate of ninety-five cents per 100 pounds, and an ocean rate of 90 cents per hundred.

The bills of lading contain a clause, of which the following is typical: " To be carried to the Port (A) of San Francisco, Cal., and thence by S. S. Shinyo Maru II to the Port (B) Kobe, Japan (or so near thereto as ship may safely get, with liberty to call at any usual port of call), and to be there delivered as above consigned or to another carrier on the route to destination if consigned beyond said port (B), upon payment immediately on discharge of the property of the freight thereon at the rate from Brady, Texas, to Kobe, Japan, of One Hundred Eighty-five cents, United States gold currency, per one hundred pounds gross weight, and advanced charges   *   *   *."

The cotton was duly transported over the lines of the Gulf, Colorado and Sante Fe Railway Company, the Panhandle and Sante Fe Railway Company and the defendant, to San Francisco, Cal., and the cars containing it were placed by the defendant railway company on pier No. 46 in San Francisco, which was

the wharf at which the steamer mentioned in the bills of lading discharged and loaded its cargoes. While the cars were standing on the pier, and before the cotton was unloaded therefrom and delivered to the steamship company, the cotton was seriously damaged by fire occurring on said pier 46 on June 4, 1916, and by water used to extinguish the fire. Twelve bales of the cotton were destroyed, and 488 were salvaged. Those salvaged were unloaded from the cars by the defendant in a badly damaged condition, and tendered to the steamship company; but the steamship company refused to accept the salvaged cotton for transportation from San Francisco, Cal., to Kobe, Japan, on the ground that its further transit would endanger the ship, because of the danger of spontaneous combustion. The defendant railway company thereupon tendered the salvaged cotton to the owner demanding that it be accepted and that the freight charges for the inland transportation be paid. The owner refused to accept the damaged cotton and demanded that it either be transported to Kobe, Japan, as provided in the bills of lading, or that it be delivered at San Francisco, Cal., without the payment of any freight charges whatsoever.

It is agreed that, if the cotton had been held for a longer period of time, it not only would have been susceptible to further damage by fire occurring from spontaneous combustion, but would have deteriorated otherwise, and further depreciated in value. Under the circumstances, and pursuant to the agreement of those concerned, it was sold to avoid further loss, without prejudice to the rights of any party, it being also agreed that the proceeds of the sale, less an amount sufficient to pay the freight charges claimed by defendant for inland carriage of the 488 salvaged bales, should be turned over to the owner of the cotton, and that the balance should be held by a disinterested third person. The present action is brought to determine whether plaintiff or defendant should receive the sum so held.

According to the freight tariff which is applicable, the rate for the transportation of this cotton to San Francisco, Cal., from the inland points referred to, is ninety-five cents per 100 pounds.

The submission states that "no claim is made against the defendant herein for the damage to said cotton, and the only question in controversy is as to the right of said defendant to freight charges as hereinafter set forth."

Plaintiff contends that the bills of lading issued by the carrier in the first instance were through bills of lading, and constituted single, indivisible contracts for the entire transportation from the point of origin to the point of ultimate destination, though they

provide for transportation by successive carriers; that the freight was payable only *in toto* on delivery of the cotton at Kobe, Japan; that as the cotton was never delivered at its destination, no freight was earned and none became payable; and that plaintiff is, therefore, entitled to the fund. Plaintiff further argues that defendant is not entitled to the freight charges because, as plaintiff contends, the inland rail carriage had not been completed by defendant, inasmuch as the cotton, at the time of the fire, had not been delivered to the steamship, but was still in the possession of defendant railroad and in its care.

Defendant contends that, by virtue of the act of February 4, 1887, entitled " An Act to Regulate Commerce," and acts supplementary thereto,* and under the tariffs established in accordance therewith, the initial carrier was without power to agree for the transportation of said cotton to Kobe, Japan, at any rate, there being no published tariff for the carriage; and that if the bill of lading can be construed as providing for one indivisible charge of one dollar and eighty-five cents from said inland points to Kobe, by way of San Francisco, then its provisions to that extent are void as contravening the provisions of said statute. Defendant also contends that the inland rail service was fully rendered and completed with respect to the 488 bales which were salvaged.

There being no claim against defendant in relation to the damage to the cotton, and defendant having unloaded the 488 bales and having tendered them to the steamship company and to the owner, we can dismiss, as without merit, plaintiff's assertion that the inland freight service as to the salvaged bales had not been completely rendered by defendant. In view of the facts set forth in the submission, we must regard the statement therein to the effect that the cotton " was never delivered to the steamship company " to imply nothing more than that such company never took actual delivery.

The question which remains, as asserted in the submission, is whether " the freight was payable only *in toto* upon delivery of the cotton at Kobe, Japan," that is, whether we must hold that no freight was earned or became payable because it was never so delivered.

I believe that defendant has established that the initial carrier was without power to agree for the transportation of the cotton at an inland rate payable only upon delivery at Kobe; and that, as so construed, the provisions of the bill of lading would be " inconsistent with the published tariffs and classifications."

In *Southern Railway Company* v. *Reid* (222 U. S. 424, 441) it

---

\* See 24 U. S. Stat. at Large, 379, chap. 104, as amd.— [REP.

is pointed out that " * * * schedules of rates, whether the road be single or forms with another a ' through route,' must be established, filed and published, designating the places. They cannot be changed without permission of the Interstate Commerce Commission, and no carrier is permitted to engage or participate in the transportation of passengers or property unless the rates for the same have been so filed and published. Criminal punishments are imposed for violations of these requirements, and civil redress of injuries received by shippers is given through the Interstate Commerce Commission."

From the only tariff provisions relative to the rate of freight and to the payment of freight charges which were applicable to either domestic or export shipments of baled cotton moving from Texas points, including those points from which the cotton involved in the suit was shipped, to San Francisco, Cal., or to said pier 46 in said city, it is here established that no through rate was published or filed from said inland points to Kobe, Japan. Furthermore, none was published which was to be payable, as one entire and indivisible amount, only on delivery at Kobe. Therefore, the initial carrier could not make any such through rate without violating the Interstate Commerce Act.

In *Hamlen & Sons Co.* v. *Illinois Cent. R. Co.* (212 Fed. Rep. 324) it was held that, as the defendant in that case " had never published or filed with the Interstate Commerce Commission a through rate to Buenos Aires, it was neither required nor could it make a through rate without violating the Interstate Commerce Law."

A railroad company engaged as an interstate common carrier cannot agree on a rate higher or lower or different than that appearing in the filed schedules. (See Interstate Commerce Act [24 U. S. Stat. at Large, 380, 381], § 6, as amd. by Hepburn Act [34 id. 586, 587], § 2. See, also, Elkins Act, being 32 U. S. Stat. at Large, 847, chap. 708, as amd. by Hepburn Act [34 id. 587, 588], § 2; Interstate Commerce Act [24 id. 380], § 3.) Such rate here was ninety-five cents for the inland carriage. There could be no valid agreement making an additional service or burden, assumed by the rail carrier, a consideration for obtaining the shipment at that rate. For it the initial carrier here could agree to carry the freight over the stipulated inland route; but for it there could not legally be an agreement to do anything more. That it did contract for something more is plaintiff's contention, for plaintiff's position is that the inland carriage was not to be paid for unless the ocean voyage was completed. Substantially he says the initial carrier agreed, for the filed rate, both to carry the cotton to San Francisco and to guarantee its carriage to Kobe, Japan, under penalty of losing

all compensation for the inland carriage if the additional service, the guaranty, was not performed.

That such an additional burden imposes no duty on the railroad is shown by the case of *Chicago & Alton Railroad Co.* v. *Kirby* (225 U. S. 155). It was there held that an agreement to expedite a particular shipment is a burden additional to the freight service for which the rate had been published; and that, inasmuch as no rate had been made and published for assuming such additional service, no relief could be had on the contract for it. The rates furnished the shipper were the regularly published rates. They did not provide for an expedited service. In the opinion (pp. 164, 165) it is said: "The implied agreement of a common carrier is to carry safely and deliver at destination within a reasonable time. It is otherwise when the action is for a breach of a contract to carry within a particular time, or to make a particular connection, or to carry by a particular train. The railroad company, by its contract, became liable for the consequence of a failure to transport according to its terms. Evidence of diligence would not excuse. If the action had deen for the common-law carrier liability, evidence that there had been no unreasonable delay would be an answer. But the company, by entering into an agreement for expediting the shipment, came under a liability different and more burdensome than would exist to a shipper who made no such special contract.

"For such a special service and higher responsibility it might clearly exact a higher rate. But to do so it must make and publish a rate open to all. This was not done."

It is also said (at p. 165): "An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation."

These views make it unnecessary for us to further consider the arguments centering round plaintiff's contention that the bills of lading constitute "single, indivisible contracts of carriage upon which freight could be earned only on delivery of the goods at ultimate destination."

Moreover, we believe the bills of lading are not necessarily to be regarded as an attempt to contravene the statutes. They can be given full effect by regarding their provisions as contemplating two separate stages of transportation. The instruments provide that the cotton is "to be carried to the Port (A) of San Francisco, Cal., and thence * * * to the Port (B) Kobe, Japan

* * · *." One of these was the inland transportation, for which the rate is stated in the bills of lading to be ninety-five cents per 100 pounds, and the other the ocean carriage for which the rate of ninety cents per 100 pounds is likewise stated. Assuming that documents like these might ordinarily be construed as plaintiff would have us construe them, nevertheless they are susceptible to a construction in no way violative of the provisions of the statutes mentioned. The latter construction should be adopted in preference to the former, which would imply that it was intended to avoid the restrictions imposed by law.

Judgment should accordingly be directed for defendant for $2,460 and costs.

CLARKE, P. J., DOWLING and McAVOY, JJ., concur.

Judgment directed for defendant for $2,460 and costs. Settle order on notice.