JAMES J. ARAJE, Appellant, v. PENNSYLVANIA RAILROAD COMPANY, Respondent.*

First Department, November 2, 1928.

*Jonah J. Goldstein* of counsel [*Thomas G. Frost* and *Joseph W. Ferris* with him on the brief; *Goldstein & Goldstein*, attorneys], for the appellant.

*Harold L. Allen* of counsel [*C. V. Boetticher, Jr.*, with him on the brief; *O'Brien, Boardman, Fox, Memhard & Early*, attorneys], for the respondent.

PROSKAUER, J. Plaintiff purchased a ticket during May, 1922, on the Pennsylvania railroad and checked a trunk, the contents of which he valued at $2,500. Because of this " excess " value he paid $2.40. The trunk was lost and he sued to recover its value. The court set aside a verdict in his favor on the ground that, since the trunk contained merchandise intended for sale, it was not transportable under the baggage tariff.

---

* Revg. 130 Misc. 29.

Admittedly the contents were not personal wearing apparel, but were linens and embroideries intended for sale.

Formerly sample baggage was defined as that " carried by commercial travelers * * * and not for sale or free distribution." In *Jewelers' Protective Union* v. *Pennsylvania R. R. Co.* (36 I. C. C. 71, 74) the Interstate Commerce Commission held the words " not for sale or free distribution " unreasonable, basing its decision upon the necessity of frequently selling samples. In reply to the railroad's contention that a change in the definition would open the door to the checking of more baggage on passenger trains than could conveniently be handled, the Commission pointed out that " Certain limitations attend the checking of sample baggage, which hinder growth of the practice. Among these may be mentioned the expense of transportation and transfer, including the fact that baggage can be checked only as an incident to payment of the passenger's fare."

The Commission approved a definition of sample baggage, which has been adopted by the defendant in its tariffs, as " baggage for the commercial as distinguished from the personal use of the passenger " and restricted sample baggage to " samples of goods * * * in trunks * * * tendered by the passenger for checking as baggage to be transported on a passenger train * * * for use by him in making sales or other disposition of the goods * * * represented thereby." (Rule 4, subd. c.) Under this definition there is no longer a prohibition against the sale of the merchandise provided they are in fact used as samples. The record is silent as to whether the linens and embroideries in the case at bar were to be regarded as representative of other merchandise for which plaintiff would take orders. All we know is that he intended to sell these linens and laces if he could. The railroad failed to negative the possibility that plaintiff also intended to take orders for similar merchandise.

The plaintiff testified, without contradiction, that the baggage master, after inquiry, was informed that the trunk contained linens and laces. Essentially the railroad contracted to carry these goods knowing full well what they were, and it should be compelled to respond to the liabilities of its contract, unless there is some question of public policy involved. Rule 19 of the baggage tariff negatives any rule of public policy. It reads: " When passengers fail to disclose nature of articles offered for checking and it develops en route or at destination that the transportation of such articles as baggage is not authorized herein, collection will be made based on double the excess baggage rate for gross weight, minimum charge 60 cents." Rule 19 has a double bearing. *First,* it indicates that the baggage official of the road had authority

to make mistakes and to rectify them; and *second*, it shows clearly that the railroad itself contemplated the possibility of such a mistake being made. There was no variation of a tariff schedule giving favoritism to a shipper, because, as the Interstate Commerce Commission points out, the rate for checking baggage is higher than the freight rate. There is nothing in the facts of this case to show that any public interest would be sacrificed by holding the railroad company to its contract.

The order setting aside the verdict and the judgment thereupon entered should be reversed, with costs, and the verdict reinstated.

DOWLING, P. J., FINCH and McAVOY, JJ., concur; MARTIN, J., dissents.

MARTIN, J. (dissenting). The plaintiff seeks to recover the sum of $2,500, the declared value of the contents of a trunk which was lost during May, 1922, while being transported by the defendant carrier from Washington to Baltimore.

The defendant was engaged in interstate commerce and it is admitted that the Federal statutes govern the action.

The plaintiff bases his right to recover upon the grounds: (1) That the carrier's agent waived the provisions of its tariffs and entered into a special agreement with him to transport his trunk containing merchandise, as baggage; and (2) that the trunk in any event contained samples properly transportable only as baggage under the tariffs.

The testimony given by the plaintiff describing the shipment and the merchandise is as follows: "Q. Now, before this was issued to you and when you told the baggagemaster that you had merchandise in there, did he ask you what kind of merchandise? A. Yes, he asked me and I told him linen and embroidery. Q. Did he ask you what they were doing there, what you did with that merchandise? A. I told him I was selling it on the road. Q. You told him that you were selling it on the road? A. Yes."

On cross-examination he said: "Q. Now all this time you were trying to sell this merchandise that was in the trunk, weren't you? A. Yes. Q. When you left New York and you had these two trunks full of merchandise, there is no question, is there — A. One trunk is what I had. Q. One trunk was all you had? A. Yes. Q. What was your intention when you left New York, to do with this merchandise? A. To sell it on the road. Q. And it was merchandise intended for sale, was it not? A. Yes."

The evidence offered by plaintiff seems to negative the claim now urged that the trunk contained samples.

The defendant says that the goods should not have been checked

as baggage and that it is not liable for a loss sustained under the circumstances disclosed. At the time the plaintiff checked his trunk, the duly approved tariffs of the defendant company, governing the transportation of passengers' baggage, had been filed, as required by statute, with the Interstate Commerce Commission and had been approved.

The tariffs provided as follows:

"RULES AND REGULATIONS.

" Rule 1. Authority for checking.

" (a) *Baggage checks will be issued for articles authorized herein* upon presentation by the owner of valid transportation only when the owner of the property is also the owner of the transportation, and is a *bona fide* passenger over the same line to or beyond the destination of the baggage."

" Rule 4. Baggage Defined.

" (a) Baggage may be either personal or sample, defined as follows:

" (b) Personal baggage consists of *wearing apparel*, toilet articles and similar effects in actual use and necessary and appropriate for the wear, use, comfort and convenience of the passenger for the purpose of the journey, *and not intended for other persons* nor for sale.

" (c) *Sample Baggage consists of baggage* for the commercial as distinguished from the personal use of the passenger *and is restricted to catalogues, models, and samples of goods*, wares or merchandise, in trunks or other suitable containers, tendered by the passenger for checking as baggage to be transported on a passenger train or boat, *for use by him in making sales or other disposition of the goods, wares or merchandise represented thereby.*"

" Rule 9. Baggage or property prohibited because of Weight, Size, Shape, Value or Character.

" (a) The baggage or property enumerated below will not be checked nor transported in regular baggage service *nor will any article not specifically authorized in this tariff be checked or transported* in such service."

" Rule 11. Excess Baggage.

" (a) Baggage or property which may be transported in regular baggage service, exceeding the weight, size or value stated in this rule and in Rules 5, 6, 8 and 10, will be charged for as excess baggage as follows:

" (b) Excess Weight: Excess weight rates will be based on the adult regular one-way fare via route of ticket and not on temporarily reduced, special, party, scrip, commutation or excursion fares. * * *

" (c) Excess Size: When any dimension exceeds 45 inches, charge will be made for each inch in excess of 45 inches for each dimension, equal to the charge for five (5) pounds excess weight. Measurements must include gable or dome-shaped end, handles or similar protuberances. No charge will be made for a fraction of an inch."

It will be observed from an examination of rule 1 that the tariffs provided only for the transportation, as baggage, of " articles authorized herein," and that by rule 4, the tariff, by definition, expressly provided that personal baggage included those articles only " not intended for other persons nor for sale," and that in its definition of *sample baggage* (Rule 4, ¶ c), it limited such baggage to representative samples to be used by a passenger " in making sales * * * of the goods, wares or merchandise represented thereby." In rule 9 the tariffs expressly provided that the carrier would not accept for transportation in baggage service any article not specifically authorized in this tariff.

The baggage shipped by plaintiff was not shipped in accordance with the above tariffs. It consisted of merchandise for sale throughout the country and was not personal baggage or samples.

To permit an agreement such as is here sought to be enforced would render ineffective the statutes passed for the purpose of providing uniform rates and service for all who desire to check baggage or transport merchandise. The agent had no power to make any such contract. (*Burke* v. *Union Pacific Railroad Co.*, 226 N. Y. 534; affd., 255 U. S. 317; *Pennsylvania Railroad Co.* v. *Titus*, 216 N. Y. 17; *Texas & Pac. R. Co.* v. *Mugg*, 202 U. S. 242; *Kansas City Southern R. Co.* v. *Carl*, 227 id. 639, 652; *Boston & Maine R. R.* v. *Hooker*, 233 id. 97, 112; *Louisville & Nashville R. R. Co.* v. *Maxwell*, 237 id. 94.)

In the present case the plaintiff obtained the transportation of his merchandise by paying a rate of only two dollars and forty cents, and the carrier, although prohibited from doing so by its tariffs, would be liable for a much less sum than if the merchandise had been properly transported as freight and at a much higher rate.

The plaintiff thus obtained expeditious services at a lesser rate than other merchants similarly situated would have had to pay for the transportation of similar merchandise in freight service. Such a practice results in an illegal preference and discrimination and will not be upheld. (*Illinois Central R. Co.* v. *Fontaine*, 289 S. W. [Ky.] 263; *Kansas City Southern R. Co.* v. *Carl*, 227 U. S. 639.)

The tariffs which are the basis for the rates required in this case having been approved, the shipper was bound by these tariffs and not some other tariffs that have been held unreasonable; these

have not been so held and were in force at the time and govern the shipment.

The shipment was of merchandise for sale only. To quote from the plaintiff's brief: "The plaintiff is an itinerant merchant salesman, engaged in the sale of linens and laces."

His evidence shows that his merchandise was not sample baggage. The sample baggage permitted "is restricted to catalogues, models, and samples of goods, wares or merchandise, in trunks * * * for use by him in making sales or other disposition of the goods, wares or merchandise represented thereby."

· A railroad company engaged as an interstate commerce carrier is not permitted to agree on a rate higher or lower than or different from that appearing in the filed schedules.

In *Chicago & Alton R. R. Co. v. Kirby* (225 U. S. 155) the court said: "An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation." (See, also, *Stevens v. Atchison, Topeka & Santa Fe R. Co.*, 207 App. Div. 442; affd., 239 N. Y. 572.)

The defendant was entitled to a dismissal of the complaint. The judgment should be affirmed.

Judgment and order reversed and the verdict reinstated, with costs.