W. R. Grace & Co., Appellant, *v.* Railway Express Agency, Inc., Respondent.

First Department, December 15, 1959.

*Emmet L. Holbrook* of counsel (*Joseph Haskell,* attorney), for appellant.

*James V. Lione* for respondent.

STEVENS, J.   Plaintiff appeals from so much of a judgment entered January 7, 1959, after trial, as limited plaintiff's recovery to $50 and awarded costs to defendant.

Briefly the undisputed facts are that the defendant, by one of its drivers, on December 20, 1955, at the vaults of the Chase Manhattan Bank, 535 Fifth Avenue, New York City, picked up a shipment of crude platinum in a box weighing approximately 50 pounds directed to Bishop & Co., Malverne, Pa.   There was no wax or lead seal on the outside of the box as required for

precious metals. Neither the full value nor the identity of the contents was written thereon, nor was the driver told the actual value of the shipment. When the driver asked the contents of the package he was informed that it contained platinum, and a valuation of $50 was declared by the shipper. The driver gave an ordinary merchandise freight receipt upon which he wrote the word "Platinum". This was a prepaid shipment for which the driver collected $2.90, the ordinary freight rate. The receipt by its terms limits liability to $50.

The driver entered this shipment in his value book, a book in which any shipment which has a declared value of $50 per pound or more is entered, and subsequently delivered the same to defendant's express depot in Long Island City, where he received a signature receipt from one O'Connor, defendant's value man. O'Connor testified by deposition that he questioned the driver as to what made this shipment of value, there being no seals on the box, and was told "it's platinum. I have it written on the sheet."

Thereafter O'Connor took the shipment to the value room, delivered it to Mitchell Robinkoff, the money clerk, and obtained a signature receipt from him. O'Connor told Robinkoff that he (O'Connor) had been told by the driver that the box contained platinum, and the sheet signed by Robinkoff had the word "platinum" written thereon.

Under the rules and practices of the defendant, any shipment leaving the value room was supposed to be signed for, but no receipt was obtained for this shipment which was never delivered.

Plaintiff brought suit to recover the full value of the platinum and offered proof to establish its claim in the amount of $56,245.75. The defendant admitted acceptance of the box, the giving of a receipt, collecting $2.90, and alleged the shipper declared a value of $50. As a separate defense defendant alleged that the shipment was delivered and received "only under and pursuant to and subject to the terms and conditions of a special contract in writing for the carriage of the same" entered into at the time of delivery and acceptance of the package. Further, that the terms and conditions of such contract were established, filed and posted as required and authorized by Act of Congress and orders of the Interstate Commerce Commission. And by the terms of the special contract in writing its liability was limited to $50, the value placed upon the property. Recovery was allowed, after trial, but limited to $50. The defendant has not appealed so the question of liability is not before us.

Plaintiff on this appeal urges that the defendant is liable for the amount of $56,117.72 (value less unpaid transportation charges of $128.03) with interest, under its applicable official money classification and rates. It contends that defendant did not establish a valid contractual limitation of liability to $50.

There was some testimony that the shipper had declared a lower rate because it carried outside insurance on the metal. There is no dispute that there is a different rate for shipment of ordinary merchandise and money or precious metals. Had the rate for the classification which includes platinum been applied, the transportation charge would have been $130.93, instead of $2.90, the amount actually charged.

The driver who collected the shipment was not armed nor, according to his testimony, had he ever driven a truck which picked up materials subject to the money receipts. He had, however, from time to time picked up values which were entered in his value book. He testified that he knew platinum was a precious metal equivalent to a greater-than-gold value.

We are faced with the question whether a shipper is entitled to recover the full value for nondelivery of a shipment, where such shipper knowingly failed to package properly or declare its full value and where the transportation charge paid was less than that applicable to precious metals, but where the identity of the contents was given the common carrier at the time of delivery, and such carrier thereafter recognized and treated the shipment as a valued one in accordance with its established procedure.

The defendant, being a common carrier, is prohibited from unjust discrimination in rates or rebates between shippers (U. S. Code, tit. 49, § 2), or the giving of undue or unreasonable preference or advantage to any company, firm or corporation (U. S. Code, tit. 49, § 3, subd. [1]). Undue or unreasonable preference does not refer solely to facilities but applies also to discrimination in rates.

Every common carrier, as that term is defined in the Interstate Commerce Act (U. S. Code, tit. 49, § 1), is required to file with the commission and publish a schedule of rates, fares, freight classification, etc. (U. S. Code, tit. 49, § 6). That was done in this case. Since this was an interstate shipment and Congress has legislated thereon, the law applicable is governed by Federal statutes and decisions. (*Adams Express Co.* v. *Croninger,* 226 U. S. 491.) It is provided that no carrier shall " charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers

or property, or for any service in connection therewith " (U. S. Code, tit. 49, § 6, subd. [7]).

A private accommodation by agreement in an interstate shipment will not take precedence over the provisions of the uniform bill of lading approved by and filed with the Interstate Commerce Commission, so as to relieve a defendant from liability where loss due to theft occurred. This is true though the act done was for the special accommodation of the shipper (*Siebert* v. *Erie R. R. Co.*, 189 App. Div. 586, affd. 232 N. Y. 517) and the defendant did not issue or deliver to the shipper any bill of lading.

In the case before us defendant filed its Official Express Classification with the commission as required. Examination of the document reveals that it contains two major classifications, i.e., " Merchandise Classification " and " Money Classification ". No provision for the receipt or transportation of precious metals appears under the " Merchandise Classification " but such provision appears under " Money Classification ".

Under " Money Classification " it is provided that a money receipt must be given for all matter received, and that shipments must not be received for transportation in the money classification " unless the actual or market value is declared by the shipper and marked by him upon the package." Where the shipment contains precious metals it must be sealed in a certain manner. Provision is made also for mixed packages containing precious metals (rule 40-A). As a precious metal, platinum was to be charged for at the gold coin rates (rule 43 [h]).

The tariff or rate schedule thus filed became the rate required or imposed by law and became as well the law between the shipper and the carrier, unless and until the commission determined the rates unreasonable and unjust, and the carrier was prohibited from departing from the tariff. Tariffs filed and published become a part of the contract of carriage. (Cf. *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534, affd. *sub nom. Union Pacific R. R. Co.* v. *Burke*, 255 U. S. 317; *New York & Honduras Rosario Mining Co.* v. *Riddle Airlines*, 3 A D 2d 457, affd. 4 N Y 2d 755.) A published tariff, so long as it is in force, is to be treated as a statute, binding upon railroad and shipper alike. (*Pennsylvania R. R. Co.* v. *International Coal Mining Co.*, 230 U. S. 184, 197.) In that case a shipper of coal which had paid the lawful rate, sought to recover as damages the difference between the amount it received as rebates and the larger

sums it claimed had been given other shippers by the carrier. The court reversed a judgment for the shipper and awarded a new trial on the ground that under the statute there was no presumption of loss on the part of the shipper and such pecuniary loss had to be proved. A mere showing of the difference in the amounts of the rebates was not sufficient. The court there recognized, however, the principle of liability.

It has been held that a shipper, by receiving and acting upon an express receipt signed only by the carrier, assents to its terms and that such receipt does not require the shipper's signature (*American Ry. Express Co.* v. *Lindenburg,* 260 U. S. 584). In that case recovery for damages to the contents of a trunk was limited to the valuation specified upon the receipt, the shipper being estopped from asserting a higher valuation. Moreover, the receipt there was a proper one because the subject matter was covered by the proper classification, i.e., the merchandise classification. The court pointed out " The transportation charges were in conformity with the tariff, and the receipt issued, insofar as the limitation of liability is concerned, was in substantial accord with the authorized receipt " (p. 588). In the case before us the transportation charges were not in conformity with the tariff filed, nor was the carrier unaware of the contents of the package. The receipt, therefore, was not a proper one. Moreover, it deviated from the filed tariff by its failure to include the correct value charge.

In *Adams Express Co.* v. *Croninger* (226 U. S. 491, *supra*) one of the questions before the court was whether the operation and effect of the contract for an interstate shipment, as evidenced by the receipt, was governed by the local law of the State or the acts of Congress regulating interstate commerce. The court held Federal legislation controlled. In the *Adams* case the answer, to which the plaintiff demurred, alleged, *inter alia*, that the package was sealed and that the defendant did not know its contents or value, that its rates and charges were filed, that plaintiff knew the charges were based on weight-value, and that the receipt issued showed no value. The demurrer was sustained in the trial court and judgment for $137.12, the full value of the ring with interest, was given the plaintiff. On appeal the judgment was reversed with the direction to overrule the demurrer. The shipper was estopped to claim a higher value than that set forth in the receipt. It should be noted that the demurrer in effect admitted that certain provisions were in the filed tariff and accordingly the receipt given would seem to have been proper under the circumstances.

The statute provides that a common carrier is liable for the actual loss or damage to property caused by it. There are exceptions where the carrier has been authorized or required by the commission to establish and maintain rates dependent upon value declared in writing by the shipper or agreed upon in writing as the released value of the property, which declaration or agreement may limit liability and recovery to an amount not exceeding the value so declared or released. In such cases the commission is empowered to make such order as would be just and reasonable under the circumstances and conditions surrounding the transportation. (U. S. Code, tit. 49, § 20, subd. [11].) No such exceptions are applicable here. Released Rates Order No. 848, effective March 1, 1929, applies to "Merchandise, other than ordinary livestock", etc., and grants authority "to establish and maintain released rates for the transportation by express of furniture not boxed * * * and of other property as specified in Rule 13, paragraphs (a), (b) and (c) of said Official Express Classification."

Examination of the paragraphs referred to under rule 13, as they appear in the "Merchandise Classification", particularly when contrasted with the pertinent provisions of rule 40-A of the "Money Classification" supports this conclusion.

The principle would seem to be "that the charge should bear some reasonable relation to the responsibility, and that the care to be exercised shall be in some degree measured by the bulk, weight, character and value of the property carried." (*Adams Express Co.* v. *Croninger*, 226 U. S. 491, 510, *supra*.) In other words, the discrimination or preference in rate differentials which is prohibited is that which is unreasonable or unjust when measured by the transportation standard. (Cf. *United States* v. *Illinois Cent. R. R.*, 263 U. S. 510.)

In light of the knowledge of the defendant of the contents of the package in this case, the defendant having some appreciation of its value, though not necessarily its full value, it can fairly be said that the charge bore no reasonable relation thereto but was in fact discriminatory or preferential (cf. *Siebert* v. *Erie R. R. Co.*, 189 App. Div. 586, affd. 232 N. Y. 517, *supra*) and, as pointed out, the receipt given here was not a proper one. This should have been a money receipt. There was no authorization contained in the filed schedules for the charge made here.

A question similar to that before us was involved in *New York & Honduras Rosario Mining Co.* v. *Riddle Airlines* (3 A D 2d 457, affd. 4 N Y 2d 755, *supra*) which had to do with the liability of a connecting or terminal airline carrier, which

did not charge the plaintiff in accord with the tariff provision. The court pointed out "the rights and duties of shippers and carriers under the Civil Aeronautics Act are similar to those imposed by the provisions of the Interstate Commerce Act" and that "Tariffs filed by an air carrier under this act are equally as binding as those filed under the Interstate Commerce Act" (p. 462). The defendant was held liable for the full value of lost bullion despite a declared or released value of $100 in the air waybill. There, as here, the defendant knew what it was carrying.

As pointed out, the agreed or released valuation should bear a reasonable relation to the rate charged for transportation, and an essential and intelligent choice of rates on the part of the shipper should affirmatively be made to appear, i.e., as between a lower and higher rate offered and obtainable. This, of course, is in the absence of a sanction contained in the filed classifications and schedules, approved by the commission, which would permit the parties to fix the agreed valuation as a limitation of liability (cf. *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534, affd. *sub nom. Union Pacific R. R. Co.* v. *Burke,* 255 U. S. 317, *supra*).

Where a legal freight charge has been fixed by a schedule of rates duly published, filed and posted in accordance with acts of Congress, a consignee, standing in the place of the owner, is bound to pay the carrier the lawful and correct charges, not those illegally or erroneously computed. And a carrier may maintain an action for the difference or balance. (*Pennsylvania R. R. Co.* v. *Titus,* 216 N. Y. 17.) Such rate when established becomes by virtue of the Interstate Commerce Act "arbitrary, immutable by the agreement, mistake or artifice of the parties and not to be deviated from" (p. 22). If the carrier is not estopped to recover the legal rate where there has been mistake, error or even illegal computation, there seems little reason why the shipper should be estopped to recover the full value in like circumstances.

On the record before us there is no basis for an estoppel against the shipper, for the carrier was not misled, and its measure of recovery is the loss actually sustained and proved. The carrier is bound by the knowledge of its agents or employees when they receipted for the metal, recognized its identity by writing the word "Platinum" on the receipt, and evidenced some recognition of its value by the care in handling the same. The special accommodation, if such it be termed, was not authorized, and the deviation from the

published schedule, without warrant, should not be sanctioned. (*Emily Shops* v. *Interstate Truck Line,* 207 Misc. 557, affd. 1 A D 2d 667, affd. 2 N Y 2d 405; *Elgart & Sons* v. *Peoples Express Co.,* 11 Misc 2d 499.)

Accordingly, the judgment appealed from should be modified on the law and on the facts so as to allow recovery in the amount of $56,117.72, the damages sustained and proved by the plaintiff, with interest and costs to plaintiff-appellant.

BREITEL, J. P., RABIN, M. M. FRANK and VALENTE, JJ., concur.

Judgment unanimously modified on the law and on the facts so as to allow recovery in the amount of $56,117.72, the damages sustained and proved by the plaintiff, with interest and costs to plaintiff-appellant.

Settle order.